# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

ANNE W. BREAUD                                    CIVIL ACTION

VERSUS                                            NO. 24-1865

LATOYA W. CANTRELL, et al.                        SECTION: "G"(5)

## ORDER AND REASONS

Before the Court is Defendants' Motion to Stay Proceedings.[1] In this litigation, Plaintiff Anne Breaud ("Breaud") sues Defendants Latoya W. Cantrell, the City of New Orleans, the New Orleans Police Department, Clifton Davis II, Victor Grant, Leslie D. Guzman, Ryan St. Martin, and John/Jane Does Numbers 1-5 ("Defendants") for allegedly violating federal law, state law, and her civil rights in retaliation for Breaud capturing and circulating two photographs of Mayor Latoya W. Cantrell ("Cantrell") and New Orleans Police Officer Jeffrey Vappie ("Vappie") at a restaurant together.[2] Defendants attempt to stay the proceedings in light of alleged open criminal and administrative investigations into named Defendants.

This Court is tasked with consideration of six factors when a stay is requested in a civil case filed in the face of a parallel criminal proceeding.[3] Granting a stay is considered an

---

[1] Rec. Doc. 10.

[2] *See* Rec. Doc. 1.

[3] *Alcala v. Texas Webb Cnty.*, 625 F. Supp. 2d 391, 398–99 (S.D. Tex. 2009) (collecting cases). The factors include: (1) the extent to which the issues in the criminal case overlap with those presented in the civil case; (2) the status of the criminal case, including whether the defendant has been indicted; (3) the private interests of the plaintiff in proceeding expeditiously, weighed against the prejudice to the plaintiff caused by a delay; (4) the private interests of and burden on the defendant; (5) the interests of the courts; and (6) the public interest. *Id.*

1

"extraordinary remedy,"[4] and this Court possesses wide discretion on the question.[5] Primarily because there exist no indictments, no target letter, and no other official statement regarding any ongoing investigations of the Defendants, the fact or scope of an imminent criminal proceeding is merely speculative at this time. This fact coupled with the seriousness of Plaintiff's allegations against a sitting public official and public employees, that they allegedly abused their power of office, conveys that the public and the Court have a strong interest in the resolution of this case. For the reasons set forth in more detail below, Defendants have failed to convince the Court the six factors weigh in favor of a stay.

## I. Background

On Sunday, April 7, 2024, Breaud observed Cantrell, the Mayor of the City of New Orleans, "appearing to be enjoying a meal and a bottle of wine" with NOPD Officer Vappie on the balcony of Tableau Restaurant.[6] Breaud claims she captured two photographs of Cantrell and Vappie on the balcony.[7] After taking these pictures, Breaud asserts she forwarded them to Raphael Goyeneche, the President of the Metropolitan Crime Commission (the "Commission").[8] Thereafter, Breaud alleges the Commission reported the incident and provided the photographs to Deputy Chief Keith Sanchez of the NOPD's Public Integrity Bureau, requesting an investigation of Vappie's conduct with his protectee, Cantrell.[9] Breaud states that at some point shortly after the

---

[4] *Trustees of Plumbers and Pipefitters Nat'l Pension Fund v. Transworld Mech., Inc.*, 886 F. Supp. 1134, 1338, 1339 (S.D.N.Y. 1995) (citing *In re Par Pharm., Inc.,* 133 F.R.D. 12, 13 (S.D.N.Y. 1990)).

[5] *In re Ramu Corp.*, 903 F.2d 312, 318 (5th Cir. 1990).

[6] Rec. Doc. 1 at 6.

[7] *Id.*

[8] *Id.* at 7.

[9] *Id.*

Commission's report to the NOPD Public Integrity Bureau, which occurred on April 12, 2024, various media outlets published the photographs Breaud captured of Cantrell and Vappie.[10] As a result of the publication of these pictures, Breaud claims her personal information was accessed, obtained, and provided to Cantrell by certain Defendants somewhere between May 9, 2024 and May 10, 2024.[11] Breaud asserts Cantrell then filed a police report against Breaud, with Cantrell claiming she was being "harassed" and "followed" by Breaud, as well as claims that Cantrell felt "unsafe" because of Breaud.[12] Cantrell then filed a "Petition for Protection" against Breaud in state court, which Breaud claims contains defamatory statements.[13] The state court issued a Temporary Restraining Order against Breaud, but ultimately dismissed Cantrell's Petition for Protection.[14]

On July 26, 2024, Breaud filed a Complaint against Defendants in this Court for alleged "violation of her civil rights, the violation of federal law by individuals acting under color of law, and violations of state law, including defamation, abuse of process, abuse of right, intentional infliction of emotional distress, malicious prosecution, general tort liability and vicarious liability…"[15] On September 10, 2024, Defendants filed this Motion to Stay Proceedings.[16] Breaud filed an Opposition on September 25, 2024,[17] and Defendants filed a Reply on September 27,

---

[10] *Id.* at 8.

[11] *Id.* at 12.

[12] *Id.* at 9–10.

[13] *Id.* at 2.

[14] *Id.* at 2–3.

[15] Rec. Doc. 1 at 1.

[16] Rec. Doc. 10.

[17] Rec. Doc. 11.

2024.[18]

## II. Parties' Arguments

### *A.*     *Defendants' Arguments in Support of the Motion*

Defendants cite a six-factor test in their Memorandum in Support of their Motion to Stay the Proceedings, alleging the factors weigh in support of a stay.[19] Defendants begin with the first factor, the extent to which the issues in the criminal case and the civil case overlap, contending this is "considered the most important threshold issue in determining whether to grant a stay."[20] Defendants assert that an alleged federal grand jury investigation currently ongoing is "inextricably intertwined" with Breaud's claims and the defenses available to Defendants.[21]

Defendants submit the actions of Breaud in taking photographs of Cantrell and Vappie are the same conduct that is included in the indictment of Vappie.[22] Defendants argue a relationship between Vappie and a "Public Official 1," presumed to be Cantrell, is mentioned in the Vappie indictment, including details of how this Public Official and Vappie shared meals together at restaurants.[23] Defendants submit this demonstrates the cases are intertwined because Breaud alleges in her Complaint that the Order of Protection sought against her was obtained for the ulterior purpose of preventing Breaud from exposing Cantrell and Vappie's allegedly inappropriate relationship and criminal conduct for which Vappie has been indicted.[24]

---

[18] Rec. Doc. 12.

[19] Rec. Doc. 10-1.

[20] *Id.* at 6

[21] *Id.*

[22] *Id.*

[23] *Id.* at 7.

[24] *Id.*

Defendants further assert the United States Attorney's Office for the Eastern District of Louisiana is currently conducting a wide-ranging investigation into Cantrell for activities that have occurred during her tenure as Mayor of the City of New Orleans, including those that are related to Vappie.[25] Defendants point out any charges resulting from this investigation could include witnesses that would be expected to testify in both matters.[26] Defendants call attention to the fact Defendants Gant, Guzman, and St. Martin are currently the subject of an investigation conducted by the NOPD's Public Integrity Bureau regarding the same conduct as that alleged in the Complaint.[27] Specifically, Defendants assert, they are under investigation for accessing and disclosing private information about Breaud in response to Breaud releasing the photographs of Cantrell and Vappie.[28]

Defendants then analyze the second factor, which calls for examination of the status of the criminal case, particularly whether a party has been indicted.[29] Despite no criminal charges pending against any Defendants, Defendants contend the federal grand jury investigation is quite active.[30] Defendants further aver courts have not categorically denied stays in situations where defendants have not yet been indicted,[31] and subjecting Defendants to this civil action would potentially cause Defendants to expose their criminal defense strategy in the discovery process.[32]

---

[25] *Id.* at 7.

[26] *Id.* at 8.

[27] *Id.*

[28] *Id.*

[29] *Id.*

[30] *Id.*

[31] *Id.* (citing *Chao v. Fleming*, 498 F. Supp. 2d 1034, 1038 (W.D. Mich. 2007)).

[32] *Id.* at 9.

Defendants move on to discuss the third factor, whether Breaud will be unduly prejudiced by the stay.[33] Defendants urge that courts require more prejudice than simply a delay in a plaintiff's right to expeditiously pursue their claim.[34] They argue a stay could be fashioned so its duration is tied to the length of the criminal proceeding, leaving Breaud full rights to bring all claims after any potential criminal proceedings are completed.[35]

Regarding the fourth factor, the private interests and burden on defendants, Defendants aver they will face substantial burdens if this civil action proceeds while Defendants are under investigation.[36] Specifically, even though criminal charges have not been filed, Defendants state Cantrell "will be forced to choose between her civil discovery obligations and her ability to assert her Fifth Amendment privilege against self-incrimination."[37] Defendants further argue the City of New Orleans will likely not be able to fulfill its civil discovery obligations without the benefit of Cantrell, Gant, Guzman, and St. Martin's testimony if they choose to exercise their Fifth Amendment rights.[38]

Next, Defendants address the fifth factor, the Court's interest in the stay.[39] Defendants reason that conducting the criminal proceedings prior to this civil case would advance judicial economy since the active investigations may "contribute to the more efficient preparation of this

---

[33] *Id.*

[34] *Id.* (citing *Whitney Nat'l Bank v. Air Ambulance by B&C Flight Mgmt., Inc.,* 2007 WL 1468417, at *3 (S.D. Tex. Jun. 4, 2007)).

[35] *Id.* at 9.

[36] *Id.* at 10.

[37] *Id.* at 9.

[38] *Id.*

[39] *Id.* at 11.

civil case."[40] Lastly, Defendants argue the sixth factor, which examines the public interest, weighs in favor of a stay.[41] Defendants cite *Campbell v. Eastland*[42] for the proposition that the public has an interest in law enforcement, leading to the conclusion criminal proceedings should take precedence over civil matters, the latter of which can be simply be stayed and adjudicated later.[43]

## B.    *Breaud's Arguments in Opposition to the Motion*

In Opposition,[44] Breaud cites the same six factor test. Regarding the first factor, the extent to which the issues in the criminal case overlap with those in the civil case, Breaud asserts it "is simply a matter of speculation whether the civil action and pending criminal investigation overlap" due to the fact no indictments have been handed down.[45] In regard to the second factor, which examines the status of the criminal proceeding, Breaud maintains there is no indication any investigation is active or that an indictment is imminent, which leads to the conclusion a stay is not warranted.[46] Breaud points to the lack of a target letter from an official source or corroboration from the U.S. Attorney's Office that there is an active investigation into Cantrell or any of the other named Defendants for their alleged actions between May 8-10, 2024.[47]

Breaud then examines the third factor, Breaud's interest in the civil action proceeding

---

[40] *Id.*

[41] *Id.*

[42] 307 F.2d 478, 487 (5th Cir. 1962).

[43] Rec. Doc. 10-1 at 11–12.

[44] Rec. Doc. 11.

[45] *Id.* at 7.

[46] *Id.* at 7–8.

[47] *Id.* at 8.

without a stay weighed against the prejudice to Breaud if a stay is granted.[48] Breaud argues a stay could result in "memories of witnesses fad[ing] and documents and other evidence [being] lost or destroyed."[49] Breaud contends no evidence has presently been seized and preserved by any party and could be lost if a stay is granted.[50] Additionally, Breaud contends courts *may* insist she establish more prejudice than simply a delay in pursuing a claim, not that they must.[51]

In regard to the fourth factor, calling for contemplation of Defendants' interests and burden if a stay is not granted, Breaud avers it is "not unconstitutional to force a defendant to choose between the negative inferences drawn from his silence and his Fifth Amendment privilege."[52] Breaud asserts those claiming prejudice to their Fifth Amendment rights must "'make a specific showing of the harm it will suffer without a stay and why other methods of protecting its interests are insufficient.'"[53] At this point, Breaud contends, there exists no compelling information that Cantrell or other named Defendants are likely to be forced to make a decision to assert their Fifth Amendment right or defend themselves in this civil suit.[54]

Breaud then moves to the fifth factor, the Court's interest in granting a stay.[55] Breaud admits courts can consider their own interest in the efficiency and judicial economy.[56] But Breaud

---

[48] *Id.* at 8–9.

[49] *Id.* at 8.

[50] *Id.*

[51] *Id.* (citing *Whitney Nat'l Bank*, 2007 WL 1468417 at *3)

[52] *Id* (citing *Baxter v. Palmigiano*, 425 U.S. 308, 318 (1975)).

[53] *Id* (citing *In re Ramu Corp.*, 903 F.2d at 320)

[54] *Id.* at 10.

[55] *Id*. 10–11.

[56] *Id.* at 10.

contends the Court is not faced with a situation that would implicate efficiency or judicial economy because duplicative discovery is not an issue when there exists no parallel criminal proceeding.[57] Breaud asserts an investigation, but not a pending criminal proceeding, means there is no current interest for the Court to postpone this civil proceeding.[58]

Lastly, Breaud scrutinizes the public interest factor. Breaud argues the public has an interest in the prompt resolution of civil cases.[59] Specific to this case, Breaud argues residents and visitors of the City of New Orleans "need to know that they can legally exist within the boundaries of New Orleans without fear of their civil rights being abridged or even outright violated."[60]

Breaud then discusses the Public Integrity Bureau ("PIB") investigation regarding Guzman, Gant, and St Martin.[61] Breaud claims any PIB investigation should not be considered by this Court when weighing a stay.[62] First, Breaud claims the PIB investigation is being conducted by a third-party firm, Transcendent Law Group ("Transcendent"), which Breaud submits does not have the power to initiate any criminal proceedings against Defendants Guzman, Gant, or St. Martin.[63] Second, Breaud avers it was the City Attorney Donesia Turner ("Turner") that chose Transcendent to perform the investigation and is "by all evidence available" the City of New Orleans' primary contact with Transcendent.[64] Third, Breaud contends Turner has "directed the

---

[57] *Id.*

[58] *Id.*

[59] *Id.* at 11.

[60] *Id.* at 12.

[61] *Id.*

[62] *Id*. at 13–14.

[63] *Id.* 13.

[64] *Id.*

manner" in which Transcendent has conducted the PIB investigation into Defendants Guzman, Gant, and St. Martin.[65] And Fourth, Breaud asserts Turner, in her capacity as City Attorney, is actively defending Defendants in this civil suit.[66] In sum, Breaud claims the lead investigator in the PIB investigation into Defendants Guzman, Gant, and St. Martin is also the lead attorney for those same individuals in this suit.[67] Thus, because Defendants' attorney is so intertwined with the alleged PIB investigation of these officers, Breaud concludes the PIB investigation should not be considered in weighing a stay.[68]

## C.    *Defendants' Reply*

In Reply,[69] Defendants first submit Breaud's Opposition is untimely considering it was filed on September 25, 2024, seven days prior to the submission date of October 2, 2024.[70] Defendants cite Local Civil Rule 7.5, which states opposing motions must be filed "no later than eight days before the noticed submission date."[71] Defendants argue Breaud has not made the required showing of "good cause" to excuse the untimely submission, and thus, Breaud's Opposition Memorandum should not be considered.[72]

Defendants then move on to address the merits of Breaud's Opposition. Defendants maintain the investigations, along with any future criminal proceedings, present a real risk of self-

---

[65] *Id.*

[66] *Id.*

[67] *Id.*

[68] *Id.* at 13–14.

[69] Rec. Doc. 12.

[70] *Id.* at 1.

[71] *Id.* at 2.

[72] *Id.* at 3.

incrimination if Defendants are asked to defend themselves and the City of New Orleans in the instant civil case.[73] Defendants reason the City would be unable to fulfill its discovery obligations or defend itself adequately without the cooperation of the individual Defendants named.[74]

Defendants then reiterate their contentions as to each of the six factors courts examine in deciding whether a stay is proper. First, Defendants reurge there is an "intuitive overlap" between the criminal investigations and the civil action by Breaud.[75] Second, Defendants maintain an indictment is not necessary for the granting of a stay in this situation.[76] Third, Defendants reiterate Breaud will not be prejudiced by a stay because she can bring her claims after the conclusion of criminal proceedings.[77] Fourth, Defendants stand by their argument that Defendants will be significantly burdened in defending themselves due to Defendants' anticipated assertion of their Fifth Amendment rights.[78] Fifth, Defendants restate the judicial interest in a stay, claiming the Court can cut down on discovery costs by allowing the investigations to run their course, potentially curbing the necessary discovery in this civil matter.[79] Sixth, Defendants explain the public interest is better served by the criminal proceedings taking place first, which will encourage the public safety and determine if there was any wrongdoing.[80]

Lastly, Defendants address the PIB investigation. Defendants accuse Breaud of resorting

---

[73] *Id.*

[74] *Id.* at 3–4.

[75] *Id.* at 4–5.

[76] *Id.*

[77] *Id.* at 6.

[78] *Id.* at 6–7.

[79] *Id.* at 7.

[80] *Id.* at 8.

to "baseless, meritless, ad hominem attacks against the City Attorney [Turner]."[81] Defendants assert there is no basis for Breaud's implication the investigation is biased or that the City controls the outcome.[82] Defendants further claim the PIB investigation could result in criminal charges if warranted by the facts.[83]

### III. Legal Standard

"The stay of a pending matter is ordinarily within the trial court's wide discretion to control the course of litigation, which includes the authority to control the scope and pace of discovery."[84] This discretion grants district courts with the "power to stay proceedings before it in the control of its docket and in the interests of justice."[85] While district courts possess broad discretion in this area, "such control is not unbounded."[86] "Proper use of this authority calls for the exercise of judgment, which must weigh competing interests and maintain an even balance."[87]

The discretion to stay civil proceedings extends to situations in which a civil case is filed while there is a pending criminal proceeding or the "likelihood of a criminal case" exists.[88] In these contexts, "[c]ourts are afforded this discretion because the denial of a stay could impair a party's Fifth Amendment privilege against self-incrimination, extend criminal discovery beyond the limits

---

[81] *Id.*

[82] *Id.*

[83] *Id.*

[84] *In re Ramu Corp.*, 903 F.2d at 318 (citing *Matter of Evangeline Refining Co.*, 890 F.2d 1312, 1320 (5th Cir. 1989); *Salter v. Upjohn Co.*, 593 F.2d 649, 651 (5th Cir. 1979)).

[85] *McKnight v. Blanchard*, 667 F.2d 477, 479 (5th Cir. 1982).

[86] *Wedgeworth v. Fibreboard Corp.*, 706 F.2d 541, 545 (5th Cir. 1983).

[87] *Id.* (internal quotation marks and citations omitted).

[88] *Wallace v. Kato*, 549 U.S. 384, 394 (2007).

set forth in Federal Rule of Criminal Procedure 16(b), expose the defense's theory to the prosecution in advance of trial, or otherwise prejudice the criminal case."[89] But, the "mere possibility of prejudice" is not enough for a party to obtain a stay, and the party moving for the stay decidedly bears the burden of establishing it is necessary.[90]

In this Circuit, courts are tasked with balancing six factors in determining if a stay is warranted when a civil case is filed while a parallel criminal proceeding is pending.[91] These factors, cited and applied by both parties in their memoranda, include:

> (1) the extent to which the issues in the criminal case overlap with those presented in the civil case; (2) the status of the criminal case, including whether the defendant has been indicted; (3) the private interests of the plaintiff in proceeding expeditiously, weighed against the prejudice to the plaintiff caused by a delay; (4) the private interests of and burden on the defendant; (5) the interests of the courts; and (6) the public interest.[92]

Even with the examination of these factors, the stay of a civil action until the conclusion of a related criminal proceeding is considered an "extraordinary remedy,"[93] and there exists a "strong presumption" in favor of proceeding forward in the civil matter to discovery.[94]

## IV. Analysis

As an initial matter, this Court exercises its discretion to consider Breaud's Opposition

---

[89] *Plumbers and Pipefitters*, 886 F. Supp. at 1338 (internal citations omitted).

[90] *In re Ramu Corp.*, 903 F.2d at 320; *Ruiz v. Estelle,* 666 F.2d at 856.

[91] *Alcala v. Texas Webb Cnty.*, 625 F. Supp. 2d at 398-99 (collecting cases). As discussed in *Alcala*, these six factors were originally articulated by District Judge Denny Chin in *Plumbers and Pipefitters,* 886 F. Supp. at 1139. These factors are commonly applied by district courts in the Fifth Circuit. *See Alcala,* 625 F. Supp. 2d at 398.

[92] *Alcala*, 625 F. Supp. 2d at 398–99 (collecting cases).

[93] *Plumbers and Pipefitters*, 886 F. Supp. 1339 (citing *In re Par Pharmacuetical, Inc.*, 133 F.R.D. 12, 13 (S.D.N.Y. 1990)).

[94] *Alcala*, 625 F. Supp. 2d at 397.

despite it being filed one day late pursuant to Local Rule 7.5. Defendants have not demonstrated prejudice in the face of the untimely filing, as they were able to file a timely Reply to Breaud's Opposition. Thus, this Court will exercise its discretion to consider the Opposition in full. Next, the Court applies the factors courts in this Circuit consider when deciding whether a stay of civil proceedings in the face of a parallel criminal proceeding is proper.[95]

### 1.   *Overlap of Issues in the Criminal Proceeding and Civil Case*

The first factor this Court examines is the "extent to which the issues in the criminal case overlap with those presented in the civil case."[96] Some courts have found "'the similarity of issues in the underlying civil and criminal actions . . . the most important threshold issue in determining whether to grant the stay.'"[97] However, prior to an indictment, courts have reasoned "whether the issues will even overlap is a mere 'matter of speculation.'"[98] Post-indictment is generally "when the degree of overlap between a criminal and civil case can most readily be determined.[99]

In the instant case, no indictments have been handed down pertaining to any Defendants named in the Complaint.[100] While Defendants may be subject to criminal and administrative investigations,[101] with no indictments, the Court possesses little information to gauge the overlap

---

[95] *Id.* at 398–99.

[96] *Id.* at 398.

[97] *Waste Management of Louisiana, LLC v. River Birch, Inc.*, 2012 WL 520660, at *4 (E.D. La. Apr. 19, 2012) (citing *Dominguez v. Hartford Fin. Servs. Grp., Inc.*, 530 F. Supp. 2d 902, 906–07 (S.D. Tex. 2008)).

[98] *Alcala*, 625 F. Supp. 2d at 401 (citing *United States ex rel. Shank v. Lewis Enters., Inc.*, 2006 WL 1064072, at *4 (S.D. Ill. Apr. 21, 2006); *Square D Co. v. Showmen Supplies, Inc.*, 2007 WL 1430723, at *4 (N.D. Ind. May 14, 2007)).

[99] *Id.* (citing *U.S. ex rel. Gonzalez v. Fresenius Medical Care North America*, 571 F. Supp. 2d 758, 762 (W.D. Tex. 2008)).

[100] *See* Rec. Doc. 1.

[101] Cantrell is allegedly the subject of a federal grand jury investigation, while Guzman, Gant, and St. Martin are allegedly subject to an administrative investigation by the PIB.

between a possible criminal proceeding and the civil case at hand. Further, no target letter or other documentation of a federal grand jury investigation has been provided to this Court, leaving the Court a dearth of information on its scope or target and how it may overlap with this civil case.

The only document provided to this Court detailing any of the alleged investigations is a letter from the President of the Metropolitan Crime Commission, Rafael C. Goyeneche III ("Goyeneche"), in relation to the PIB investigation.[102] The letter requests PIB investigate "Officer Vappie's behavior and conduct on the weekend of April 7th," the same weekend Breaud snapped the photographs of Cantrell and Vappie.[103] However, this letter merely requests an investigation, it provides no detail on whether the investigation is currently active and what the current target of an investigation may be.[104] Even if we were to assume Goyeneche's request became the target of the investigation, the letter suggests that any potential investigation centers around Vappie's conduct and his compliance with NOPD procedures and policies, not the actions of Cantrell or any other named Defendants in this case.[105] This letter does not indicate an overlap of issues between cases, and thus, does not support granting a stay in this civil matter.

### 2.     *Status of the Criminal Proceedings*

The Court next analyzes the "status of the criminal case, including whether the defendant has been indicted."[106] In general, a "stay of a civil case is most appropriate where a party to the

---

[102] Rec. Doc. 1 at 38–39.

[103] *Id.* at 38.

[104] *See id.*

[105] *See id.*

[106] *Alcala*, 625 F. Supp. 2d at 399.

civil case has already been indicted for the same conduct . . ."[107] Courts typically "decline to impose a stay where the defendant is under criminal investigation, but has yet to be indicted,"[108] and some courts have gone as far as to deny a motion to stay based on "this ground alone."[109] Accordingly, the fact none of the named Defendants in this case have been indicted weighs heavily in favor of denying the stay.

Defendants rely on *Waste Management*, where this Court noted a lack of criminal charges does not "militate against the granting of a stay of discovery."[110] While that is true, in *Waste Management*, the fact co-conspirators had been indicted and/or had plead guilty *along* with an active criminal investigation convinced this Court that indictments of named Defendants in the civil case were "imminent," which was an important factor weighing in favor of a stay.[111] Here, none of the Defendants have been indicted and no alleged co-conspirators were named in the Complaint; nor are any named Defendants alleged to be unindicted co-conspirators. Defendants have not demonstrated an indictment is imminent or even what the investigations target. By Cantrell's own admission, she has been under countless investigations since her time as a city council member and later as mayor.[112] None of these investigations have resulted in an indictment, and Cantrell has provided no evidence that one is imminent related to conduct at issue in this civil

---

[107] *Plumbers and Pipefitters*, 886 F. Supp. at 1139.

[108] *Alcala*, 625 F. Supp. 2d at 401.

[109] *Citibank, N.A. v. Hakim*, 1993 WL 481335, at *1 (S.D.N.Y. Nov. 18, 1993).

[110] *Waste Management of Louisiana*, 2012 WL 520660 at *4 (internal citations and quotations omitted).

[111] *Id.*

[112] Rec. Doc. 11 at 6. Plaintiff cites one of Cantrell's press conferences, *see* Lindsay Kornick, *New Orleans Mayor Suggests Investigations Against Her Driven by Race: "Prevalent Relative to Black Leadership"*, Fox News, https://www.foxnews.com/media/new-orleans-mayor-suggests-investigations-against-driven-race-prevalent-relative-black-leadership (Nov. 23, 2023).

case.

As of July 19, 2024, it is true that Vappie has been indicted for wire fraud and making false statements to investigators.[113] The U.S. Attorney had the opportunity to indict Cantrell or any of the other Defendants here if the facts that make up this case were so overlapping and intertwined, but the indictment solely charges Vappie.[114] As such, the status of Vappie's criminal proceeding has no apparent bearing on whether this civil matter against the named Defendants should move forward. Accordingly, this factor weighs against granting a stay.

### 3.      Breaud's Interest

Next the Court examines "the private interests of the plaintiff in proceeding expeditiously, weighed against the prejudice to the plaintiff caused by a delay."[115] In addition to the general interest Breaud possesses in expeditiously pursuing this civil action, Breaud faces the potential for loss of evidence and the ability to put on an effective case as time passes.[116] Once Cantrell leaves office, which she will in almost a year, records and documents could be lost or destroyed as a new administration takes over. There is no certainty evidence has been collected and preserved by any investigatory agency in the alleged investigations ongoing pertaining to Defendants. Even if evidence has been preserved, there is no indication it would be relevant to this case or discoverable. The potential loss of evidence is bolstered by there being no indication an indictment is soon forthcoming against any of the named Defendants, which would result in a stay for an indefinite period. A lengthy delay in this civil matter has the potential to greatly prejudice Breaud's ability

---

[113] *United States v. Vappie*, Case No. 24-CR-165, Rec. Doc. 1 at 1.

[114] *See id.*

[115] *Alcala*, 625 F. Supp. 2d at 399.

[116] *Id.* at 405 (citing *Fresenius Medical*, 571 F. Supp. 2d at 763; *Sidari v. Orleans County*, 180 F.R.D 226, 230 (W.D.N.Y. 1997); *SEC v. Brown*, 2007 WL 4192000, at *2 (D. Minn. July 16, 2007)).

to present her case. Consequently, this factor weighs against a stay.

### 4.     *The Private Interests and Burden on Defendant*

Next, the Court considers "the private interests of and burden on the defendant" if the stay is not granted.[117] Defendants assert, if the civil matter moves forward, Cantrell and the other named Defendants "will be forced to choose between [their] civil discovery obligations and [their] ability to assert [their] Fifth Amendment privilege against self-incrimination."[118]

The party who requests a stay "must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to some one else."[119] Consequently, a "mere possibility of prejudice" arising from civil discovery is not enough to grant a stay.[120] "Allegations" alone of prejudice to a criminal case from civil discovery are "conclusory and insufficient to warrant a stay . . . "[121]

Defendants have presented no more than the "mere possibility of prejudice" to their Fifth Amendment rights that could result from proceeding with civil discovery in this case. Without more information on the target of the criminal investigations, it is not clear how answering questions in this civil case would open Defendants to self-incrimination. Defendants seem to contend this prejudice could come from a "negative inference" accompanying asserting their Firth Amendment rights in a civil case.[122] While courts have held the Fifth Amendment does "not forbid

---

[117] *Alcala*, 625 F. Supp. 2d at 399.

[118] Rec. Doc. 10-1 at 9.

[119] *Landis v. North American Co.*, 299 U.S. 248, 255 (1936).

[120] *In re Ramu Corp.*, 903 F.2d at 320.

[121] *U.S. v. Banco Cafetero Intern.*, 107 F.R.D. 361, 366 (S.D.N.Y. 1985).

[122] Rec. Doc. 10-1 at 4.

adverse inferences against parties to civil actions when they refuse to testify,"[123] there exists no precedent asserting fact finders are *required* to draw such negative inferences.[124] Thus, at this stage, any prejudice to Defendants' Fifth Amendment rights is speculative, and Defendants have failed to demonstrate a clear case of hardship resulting from a denial of the stay.

Defendants additionally argue the City of New Orleans will face prejudice as a result of Defendants pleading their Fifth Amendment rights because the City of New Orleans will not be able to fulfill its discovery obligations without Defendants' testimony.[125] It is not apparent what testimony from Defendants will be necessary for the City to defend itself and it is not clear what topics or questions Defendants will plead their Fifth Amendment rights in response to. Nor do Defendants explain why there would be no other way for the City to fulfill discovery obligations. Considering all named Defendants are either public officials or the City itself, much of the evidence relevant to this case should be a matter of public record and readily available through public record requests. The notion that the only way for Defendants to adequately defend themselves is through testimony from Defendants seems an overreach.

If Defendants do assert their Fifth Amendment rights, they must do so particularly, and "protection must be confined to instances where the witness has reasonable cause to apprehend danger from a direct answer."[126] Ultimately, "it is for the court to say whether [a witness's] silence is justified," and the court can require an answer if it is clear the witness is mistaken in their belief

---

[123] *Burdine v. Johnson*, 262 F.3d 336, 366 (5th Cir. 2001).

[124] *Hernandez v. Theriot,* 709 F. App'x 755, 757 (5th Cir. 2017).

[125] Rec. Doc. 10-1 at 10–11.

[126] *Hoffman v. U. S.*, 341 U.S. 479, 486 (1951).

that an answer would hazard incrimination.[127] Therefore, whether the City will face prejudice as a result of Defendants' anticipated invocation of their Fifth Amendment rights remains speculative, reflecting a mere possibility of prejudice.

As for the Indictment of Vappie, which alleges he committed wire fraud and made false statements to investigators during his time as a member of Cantrell's Executive Protection Unit, it in no way contends he acted in concert with or in a conspiracy with Public Official 1, presumably Cantrell, or any of the other named Defendants.[128] Cantrell is not named as a defendant in that case, and Vappie is not named as a defendant in this case. The instant case is not about whether Cantrell and Vappie were engaged in an inappropriate relationship or if Cantrell was involved in Vappie's alleged criminal conduct. Instead, it is about whether a public official and/or employees abused their power to intimidate Plaintiff while in public office. Accordingly, the Court is hard pressed to understand how Cantrell's Fifth Amendment right against self-incrimination could be prejudiced by her participation in this civil case based on an indictment against Vappie for wire fraud and making false statements to investigators. Even considering the fact Cantrell could be called as a witness in Vappie's criminal matter, the potential of having to testify as a witness in a criminal case does not necessarily raise a Fifth Amendment issue in an allegedly parallel civil matter. In other words, simply because Cantrell's testimony may have a negative impact on Vappie's criminal case does not automatically give rise to implication of her Fifth Amendment right against self-incrimination in this civil case.

### 5. *Interest of the Court*

Under this factor, "a court can consider its own interests in efficient administration and

---

[127] *Id.*

[128] *United States v. Vappie*, Case No. 24-CR-165, Rec. Doc. 1.

judicial economy," including the interest of moving cases to a swift conclusion.[129] Courts have been wary to "guess what criminal acts" defendants may be charged with if there is uncertainty as to when or whether a defendant may be indicted.[130] Considering no indictments have been handed down against any Defendants in this civil case and no evidence has been produced that indictments may be imminent, a stay under these circumstances could prove unreasonably lengthy and impede on the expedient resolution of this case. In the end, a stay may not even be necessary considering the possibility no criminal charges will be brought.[131]  Therefore, this factor weighs in favor of denying the stay, at this time.

### 6.    *The Public Interest*

Lastly, the Court considers the public interest in a stay. On the one hand, Breaud argues the public has an interest in quick adjudication of this civil case because visitors and residents of New Orleans deserve to know if they can exist in New Orleans without fear of their civil rights being violated.[132] On the other hand, Defendants claim the public has an interest in law enforcement, meaning the criminal proceedings should take precedence over this civil matter.[133] While the public does have an interest in law enforcement, it also has an interest in the timely adjudication of this civil case, especially when no criminal proceeding is underway. The truth regarding whether the public officials named in this suit abused their office by violating Breaud's

---

[129] *Fresenius*, 571 F. Supp. 2d at 765 (internal citations omitted).

[130] *Citibank, N.A. v. Hakim*, 1993 WL 481335, at *2 (S.D.N.Y. 1993); *Lewis Enterprises,* 2006 WL 1064072 at *5 (giving weight to the fact that granting a stay "could delay the progress of this case for a number of years—even assuming the indictments come down soon" in the Court's decision to deny the stay).

[131] *See Lewis Enterprise*, 2006 WL 1064072 at *5 (noting that "given the uncertainty as to whether the [defendants] will be indicted, there is a real possibility that this action will be stayed for no reason.").

[132] Rec. Doc. 11 at 12.

[133] Rec. Doc. 10-1 at 11–12.

civil rights, among other allegations, lies in the resolution of this civil case, a fact lending great weight to the public's interest in its efficient administration. Further, trust in civic leaders is not the only public interest implicated in this case. Equally important is public confidence in the courts' ability to efficiently and fairly manage cases before them. This interest would not be served by a possibly lengthy and ultimately unnecessary stay for a criminal prosecution that may never materialize.

**V. Conclusion**

Based on the foregoing, the Court denies the motion to stay because all six factors weigh against staying this civil action. Considering that no indictments have been handed down against any of the named Defendants and no target letter outlining the scope of the allegedly ongoing investigations has been provided, the Court finds that a stay is not warranted at this time. Defendants may reurge a motion to stay if circumstances change.

Accordingly,

**IT IS HEREBY ORDERED** that the Motion to Stay[134] is **DENIED**.

**NEW ORLEANS, LOUISIANA**, this  16th  day of October, 2024.

**NANNETTE JOLIVETTE BROWN**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**

---

[134] Rec. Doc. 10.