UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

ANNE W. BREAUD                                          CIVIL ACTION

VERSUS                                                 NO. 24-1865

LATOYA W. CANTRELL, et al.                             SECTION: "G"(5)

ORDER AND REASONS

On July 26, 2024, Plaintiff Anne W. Breaud ("Breaud") filed a Complaint in this Court

against Mayor LaToya W. Cantrell ("Cantrell"), Clifton Davis II ("Davis"), the City of New

Orleans (the "City"), and several other defendants for allegedly violating federal law, state law,

and her civil rights in retaliation for Breaud capturing and circulating two photographs of Mayor

Cantrell and New Orleans Police Officer Jeffrey Vappie at a restaurant together.[1]  Pending before

the Court is a Motion to Dismiss Pursuant to Rule 12(c) and for Qualified Immunity filed by

Cantrell, Davis, and the City.[2]  Breaud opposes the motion.[3]  Considering the motion, the

memoranda in support and in opposition, the record, and the applicable law, the Court finds certain

pleading deficiencies in the Amended Complaint. Therefore, the Court denies the motion without

prejudice and grants Breaud leave to file a Second Amended Complaint and Rule 7(a)(7) reply

tailored to the qualified immunity defense.

---

[1] Rec. Doc. 1.

[2] Rec. Doc. 47.

[3] Rec. Doc. 52.

1

## I. Background

On Sunday, April 7, 2024, Breaud observed Cantrell, the Mayor of the City of New Orleans, "appearing to be enjoying a meal and a bottle of wine" with NOPD Officer Vappie on the balcony of Tableau Restaurant.[4] Breaud claims she captured two photographs of Cantrell and Vappie on the balcony.[5] After taking these pictures, Breaud asserts she forwarded them to Raphael Goyeneche, the President of the Metropolitan Crime Commission (the "Commission").[6] Thereafter, Breaud alleges the Commission reported the incident and provided the photographs to Deputy Chief Keith Sanchez of the NOPD's Public Integrity Bureau, requesting an investigation of Vappie's conduct with his protectee, Cantrell.[7] Breaud states that at some point shortly after the Commission's report to the NOPD Public Integrity Bureau, which occurred on April 12, 2024, various media outlets published the photographs Breaud captured of Cantrell and Vappie.[8]

Breaud asserts Cantrell filed a police report against Breaud on May 9, 2024, with Cantrell claiming she was being "harassed" and "followed" by Breaud, as well as claims that Cantrell felt "unsafe" because of Breaud.[9] As a result of the information Cantrell provided to the NOPD, Breaud claims her personal information was accessed, obtained, and provided to Cantrell by certain Defendants somewhere between May 9, 2024 and May 10, 2024.[10]

Cantrell then filed a Petition for Protection from Stalking or Sexual Assault (the "Petition

---

[4] Rec. Doc. 45 at 6–7.

[5] *Id.* at 7.

[6] *Id.* at 8.

[7] *Id.*

[8] *Id.*

[9] *Id.* at 11–12.

[10] *Id.* at 14.

for Protection") against Breaud in state court, which Breaud claims contained false and defamatory statements.[11] The state court issued a Temporary Restraining Order against Breaud, but ultimately dismissed Cantrell's Petition for Protection.[12]

On July 26, 2024, Breaud filed a Complaint in this Court against Defendants Latoya W. Cantrell, the City of New Orleans, the New Orleans Police Department, Clifton Davis II, Victor Gant, Leslie D. Guzman, Ryan St. Martin, and John/Jane Does Numbers 1-5 for alleged "violation of her civil rights, the violation of federal law by individuals acting under color of law, and violations of state law, including defamation, abuse of process, abuse of right, intentional infliction of emotional distress, malicious prosecution, general tort liability and vicarious liability…"[13]

On September 10, 2024, Defendants filed a motion to stay in light of alleged open criminal and administrative investigations into certain named Defendants.[14] On October 16, 2024, the Court denied the motion because the fact or scope of an imminent criminal proceeding was merely speculative and there is a strong interest in the resolution of the case.[15]

On December 12, 2024, the Court granted an unopposed motion to dismiss all claims pending against the New Orleans Police Department.[16]

On January 14, 2024, Defendants Cantrell, the City of New Orleans, Davis, Gant, Guzman, and St. Martin filed a first Motion to Dismiss Pursuant to Rule 12(c) and for Qualified Immunity.[17]

---

[11] *Id.* at 16–17.

[12] *Id.* at 4, 20.

[13] Rec. Doc. 1 at 1.

[14] Rec. Doc. 10.

[15] Rec. Doc. 13.

[16] Rec. Doc. 21.

[17] Rec. Doc. 26.

On March 27, 2025, this Court granted Breaud leave to file an Amended Complaint.[18] The Amended Complaint withdrew all allegations against Gant, Guzman, and St. Martin.[19] Therefore, the only remaining Defendants in this matter are Cantrell, the City of New Orleans, and Davis.[20] In the Amended Complaint, Breaud brings claims under Section 1983 for violations of due process and her right to privacy and for First Amendment retaliation.[21] She also brings federal claims under the Driver's Privacy Protection Act ("DPPA"), the Computer Fraud and Abuse Act ("CFAA"), and the Electronic Communications Privacy Act ("ECPA").[22] She brings state law claims for defamation, abuse of process, abuse of right, intentional infliction of emotional distress, malicious prosecution, general tort liability, and violations of Louisiana's Public Records Law.[23] Considering the substantial amendment to the pleadings, the Court dismissed the first Motion to Dismiss as moot and granted Defendants leave to file a motion tailored to the Amended Complaint.[24]

On April 10, 2025, Defendants Cantrell, Davis, and the City (collectively referred to hereafter as "Defendants") filed the instant second Motion to Dismiss Pursuant to Rule 12(c) and for Qualified Immunity.[25] Breaud filed an opposition on April 29, 2025.[26] Defendants filed a reply

---

[18] Rec. Doc. 44.

[19] Rec. Doc. 45.

[20] *Id.*

[21] *Id.* at 22–23, 25–26.

[22] *Id.* at 23–25.

[23] *Id.* at 26–36.

[24] Rec. Doc. 44.

[25] Rec. Doc. 47.

[26] Rec. Doc. 52.

on May 5, 2025.[27]

## II. Parties' Arguments

### A.    *Defendants' Arguments in Support of the Motion*

Defendants move the Court to dismiss all claims pending against them.[28] First, Defendants move the Court to dismiss Breaud's claims for violation of her privacy and due process rights under 42 U.S.C. § 1983.[29] Defendants urge that Breaud's "vague allegation of a violation of due process" fails to state a claim.[30] Defendants further urge there is not a constitutional right to privacy for the type of information typically found on driver's licenses or arrest records.[31]

Second, Defendants assert Breaud failed to plausibly allege a First Amendment retaliation claim.[32] Defendants argue Breaud did not plausibly allege she was engaged in protected activity under the First Amendment when she photographed Cantrell on a restaurant balcony and Breaud failed to plausibly allege that the conduct was a matter of public concern.[33]

Third, Defendants assert Breaud failed to plausibly allege a claim against them in their official capacities under *Monell*.[34] Defendants argue that Breaud offers nothing more than the fact Defendants were employees of the City, acted under the color of state and local law, and violated

---

[27] Rec. Doc. 53.

[28] Rec. Doc. 47. The motion does not make an argument regarding Louisiana's Public Records Law.

[29] Rec. Doc. 47-1 at 4.

[30] *Id.* at 5.

[31] *Id.* at 5–6.

[32] *Id.* at 6.

[33] *Id.* at 7.

[34] *Id.*

Breaud's constitutional rights.[35] Defendants contend their employment status with the City is not enough for them to face liability under *Monell*.[36] Additionally, Defendants argue there can be no *Monell* claim without an underlying constitutional violation.[37] Defendants also argue that Breaud has failed to plausibly allege any policy or custom of the City or the New Orleans Police Department of disseminating private information of individuals in the absence of a permissible use of that information.[38] Defendants further contend Breaud has not asserted facts drawing a causal link between any policy or custom and the alleged injury.[39]

Fourth, Defendants argue that Breaud has failed to state a claim under the CFAA.[40] Breaud alleges that Defendants violated the CFAA by soliciting, obtaining and/or using information about Breaud derived from the National Crime Information Center ("NCIC") in the absence of a permissible use.[41] Defendants contend the text of the CFAA does not reference any "permissible uses."[42] Defendants argue the CFAA's main use is to subject individuals to criminal liability for intentionally accessing a computer without authorization or in a way that exceeds their authorization.[43] According to Defendants, Breaud failed to allege any Defendant exceeded their

---

[35] *Id.*

[36] *Id.* at 8.

[37] *Id.*

[38] *Id.* at 9.

[39] *Id.*

[40] *Id.*

[41] *Id.*

[42] *Id.* at 9–10.

[43] *Id.* at 10.

authorized access of any computer system.[44] Defendants further argue the CFAA does not include any provision creating a right of action for "publishing" information as alleged by Breaud.[45]

Fifth, Defendants argue Breaud has failed to state a claim for violation of the ECPA.[46] Defendants claim the ECPA is a statute directed at wiretapping, and Breaud has not pled any facts establishing there was any wiretap of Breaud's communications.[47]

Sixth, Defendants assert Breaud's claims under the DPPA should be dismissed.[48] Breaud alleges Defendants Cantrell and Davis violated the DPPA by soliciting, obtaining, and/or using the information derived from Officers St. Martin, Guzman and other John/Jane Does in the absence of a permissible use.[49] Accepting as true Breaud's allegation that Officer St. Martin or Officer Guzman accessed Breaud's private information in the DMV database, Defendants assert they were acting pursuant to a permissible use in their capacity as law enforcement officers, while carrying out their functions as law enforcement officers.[50] Because Cantrell advised that she was planning to pursue legal action against Breaud, Defendants asserts any alleged disclosure of the matter would have been permissible.[51]

Seventh, Cantrell and Davis argue they are entitled to qualified immunity for the claims

---

[44] *Id.*

[45] *Id.* at 11.

[46] *Id.*

[47] *Id.*

[48] *Id.* at 12.

[49] *Id.*

[50] *Id.* at 14.

[51] *Id.*

brought against them in their individual capacities.[52] According to Defendants, Breaud cannot demonstrate that there was no legal basis for Officer Guzman or any NOPD officer to conduct a search of her personal information or background when she was engaged in suspicious or harassing activity as reported by Cantrell.[53] Defendants argue there was no constitutional or statutory violation based on the facts alleged.[54] Defendants argue Davis was performing his job duties as Chief of Staff and his actions were not objectively unreasonable.[55] Defendants assert Cantrell's actions were not objectively unreasonable because she felt she was the victim of harassment and feared for her safety.[56]

Eighth, Defendants argue the Court should decline to exercise supplemental jurisdiction over Breaud's state law claims.[57] In the alternative, Defendants argue Breaud has failed to state a claim against them under state law.[58]

Defendants assert Breaud has failed to state a claim for defamation because the allegations Cantrell included in the state court Petition for Protection were material to the relief sought and Breaud fails to plead any non-conclusory factual allegations of malice.[59] Defendants contend Breaud's claim for abuse of process is without merit because Breaud fails to allege a willful act in

---

[52] *Id.* at 15.

[53] *Id.* at 16.

[54] *Id.*

[55] *Id.* at 17.

[56] *Id.* at 17–18.

[57] *Id.* at 18.

[58] *Id.* at 19.

[59] *Id.* at 20.

the use of the process not proper in the regular prosecution of the proceeding.[60] Defendants assert Breaud's claim for abuse of right fails because Breaud does not plead any facts to show abuse of any valid right of Cantrell within the powers and duties enumerated in Section 4-206 of the Home Rule Charter of the City of New Orleans.[61] Defendants aver Breaud has not stated a claim for intentional infliction of emotional distress because Breaud pleads no facts to show Cantrell knew her actions would cause Breaud to suffer emotional distress or that Cantrell's actions were extreme or outrageous.[62] Defendants argue Breaud's claims for malicious prosecution fails because Breaud fails to allege facts to show the absence of probable cause or presence of malice.[63] Finally, Defendants argue Breaud has not stated a negligence claim because she does not allege Defendants failed to conform to a specific standard.[64]

## B.    Breaud's Arguments in Opposition to the Motion

In opposition, Breaud contends Defendants are blatantly misrepresenting the factual allegations contained in the Amended Complaint.[65] Breaud argues Defendants have failed to acknowledge Cantrell's egregious conduct in drafting and filing a patently false Petition for Protection in the Civil District Court for the Parish of Orleans.[66] Breaud asserts that the allegations in the Petition are outright perjurious fabrications, or at best grossly negligent.[67] Breaud asserts

---

[60] *Id.* at 20–21.

[61] *Id.* at 21.

[62] *Id.* at 22.

[63] *Id.* at 23.

[64] *Id.* at 24.

[65] Rec. Doc. 52 at 2.

[66] *Id.*

[67] *Id.*

she has sufficiently pleaded facts that make her recovery not only plausible, but likely.[68] Breaud goes on to address each of Defendants' arguments in turn.

First, Breaud asserts she has a fundamental right to privacy that can only be abridged through due process.[69] Breaud asserts Cantrell and Davis infringed on her inherent right to privacy by recklessly and wantonly publishing her unredacted personal information, including her date of birth, social security number, and an allegation that Breaud "has a history of assault," in the state court Petition for Protection.[70] Breaud contends the taking of two photographs of Cantrell and Vappie and forwarding them to the Metropolitan Crime Commission was not an act that made Breaud a public figure.[71] Breaud argues it is not objectively reasonable for a City official and employee to use City resources to obtain and disclose protected information in violation of federal law for the personal benefit of a City official.[72]

Second, Breaud argues she has stated a claim for First Amendment retaliation.[73] She contends her taking of the photographs was protected by the First Amendment.[74] She argues Cantrell's filing of the state court Petition for Protection was a retaliatory action and a failed attempt to shield the public from Cantrell's indiscretions.[75]

---

[68] *Id.*

[69] *Id.* at 4.

[70] *Id.*

[71] *Id.*

[72] *Id.* at 5.

[73] *Id.*

[74] *Id.*

[75] *Id.* at 5–6.

Third, Breaud asserts she has stated an official capacity claim under *Monell*.[76] Breaud argues that *Monell* does not demand a heightened pleading standard.[77] Breaud contends she has alleged a *de facto* policy, custom, and practice of Cantrell misusing departmental resources for her personal benefit.[78] Specifically, Breaud argues that Cantrell instructs NOPD officers to perform tasks for Cantrell for her personal gain.[79] Breaud asserts "[t]he fact that such collusion occurs among a number of City employees in repeated incidents demonstrates its widespread and pervasive nature."[80]

Fourth and Fifth, Breaud argues she has stated a claim under the CFAA and ECPA because the statutes regulate the improper dissemination of information, even if it is legally obtained.[81]

Sixth, Breaud asserts she has stated a claim under the DPPA because she alleges that Cantrell included Breaud's private personal information obtained from the NOPD in the state court Petition for Protection.[82] Breaud contends the DPPA is unquestionably "clearly established" law.[83]

Seventh, Breaud contends Davis and Cantrell are not entitled to qualified immunity because the Amended Complaint contains detailed factual allegations demonstrating their conduct violated clearly established law.[84] Because resolution of factual disputes requires discovery,

---

[76] *Id.* at 6.

[77] *Id.* at 6–7.

[78] *Id.* at 8.

[79] *Id.*

[80] *Id.*

[81] *Id.* at 9.

[82] *Id.*

[83] *Id.*

[84] *Id.* at 10.

Breaud suggests it would be premature for the Court to rule on qualified immunity at this stage.[85] Breaud asserts that Defendants are minimizing the outrageous and unlawful actions of Cantrell (aided by Davis) in the course of filing Cantrell's state court Petition for Protection.[86]

Eighth, Breaud argues she has stated a claim for malicious prosecution under Louisiana law.[87] Breaud contends she adamantly disagrees with Cantrell's assertion that she "had an honest belief in the facts" recited in the Petition for Protection.[88] Breaud contends no reasonable person could have believed Cantrell's allegation that Breaud had over 800 hours of video of Cantrell.[89] Therefore, Breaud asserts Cantrell acted without probable cause.[90] Breaud also argues she has adequately alleged malice because Cantrell filed the Petition more than a month after Breaud took the photographs but only two days after the media reported on the incident.[91] Finally, Breaud asserts she has stated a negligence claim by alleging that the Petition for Protection was wanton and reckless.[92] For these reasons, Breaud argues the Motion to Dismiss should be denied.[93] If the Court finds there is merit to the Motion to Dismiss, Breaud requests the opportunity to further amend the complaint.[94]

---

[85] *Id.* at 11.

[86] *Id.*

[87] *Id.* at 14.

[88] *Id.* at 15.

[89] *Id.*

[90] *Id.*

[91] *Id.* at 16.

[92] *Id.* at 17.

[93] *Id.* at 18.

[94] *Id.*

C.    **Defendants' Arguments in Further Support of the Motion**

In reply, Defendants argue Breaud has failed to allege a *Monell* claim that is plausible on its face.[95] Defendants assert Breaud has failed to plead any facts to establish a policy or custom.[96] Defendants note the opposition offers a conclusory allegation that there were multiple incidents demonstrating its widespread and pervasive nature, but the Amended Complaint only discusses one incident involving Cantrell.[97]

Defendants also point out that Breaud did not respond to their argument that law enforcement acted within their authority if they accessed Breaud's records and that disclosure of the matter was pursuant to a permissible use.[98] Therefore, Defendants argue the DPPA claim should be dismissed.[99]

With respect to the First Amendment retaliation claim, Defendants assert Breaud has failed to allege Cantrell's conduct was the but-for cause and the adverse action would not have been taken absent the retaliatory motive.[100] Furthermore, Defendants suggest that Breaud fails to plead any retaliatory motive by Davis.[101]

Defendants reiterate their argument that Davis and Cantrell are entitled to qualified immunity.[102] Defendants assert there was no constitutional violation by Davis, and Defendants

---

[95] Rec. Doc. 53 at 2.

[96] *Id.* at 3.

[97] *Id.*

[98] *Id.* at 4.

[99] *Id.* at 7.

[100] *Id.*

[101] *Id.*

[102] *Id.* at 7–9.

argue the allegations against Davis amount to clerical tasks any chief of staff could perform as part of their job responsibilities.[103] Defendants argue Cantrell is entitled to qualified immunity because Breaud cannot demonstrate there was no legal basis for the NOPD to conduct a search of her personal background when she was reported as being engaged in suspicious or harassing activity.[104] Defendants assert any access to Breaud's private information was for a permissible use because Cantrell was anticipating filing a lawsuit.[105] According to Defendants, "Cantrell did not publish Breaud's information but rather filed a legal petition with a court of competent jurisdiction to stop the stalking and harassment she was suffering."[106] Therefore, Defendants assert there was no constitutional violation by Cantrell, and Breaud has not shown that Cantrell's actions were objectively unreasonable.[107]

Finally, Defendants contend Breaud has not stated a valid negligence claim.[108] Defendants assert Breaud has failed to plead any of the required elements.[109]

### III. Legal Standard

As an initial matter, the Court notes that Defendants filed the instant Motion to Dismiss the Amended Complaint under Rule 12(c). Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for

---

[103] *Id.* at 8.

[104] *Id.* at 9.

[105] *Id.*

[106] *Id.*

[107] *Id.*

[108] *Id.*

[109] *Id.* at 9–10.

judgment on the pleadings."[110] A motion under Rule 12(c) "is designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts."[111] Defendants filed an Answer to the original Complaint, but not to the Amended Complaint. Therefore, the instant motion is more properly considered under Rule 12(b)(6). However, a Rule 12(c) motion "is subject to the same standard as a motion to dismiss under Rule 12(b)(6)."[112] Therefore, the Court proceeds to consider the motion under Rule 12(b)(6).

Federal Rule of Civil Procedure 12(b)(6) provides that an action may be dismissed for "failure to state a claim upon which relief can be granted."[113] A motion to dismiss for failure to state a claim is "viewed with disfavor and is rarely granted."[114] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[115] "Factual allegations must be enough to raise a right to relief above the speculative level."[116] A claim is facially plausible when the plaintiff has pleaded facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged."[117]

---

[110] Fed. R. Civ. P 12(c).

[111] *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002) (quoting *Hebert Abstract Co. v. Touchstone Props., Ltd.*, 914 F.2d 74, 76 (5th Cir. 1990)).

[112] *Doe v. Myspace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008) (citing *Johnson v. Johnson*, 385 F.3d 503, 529 (5th Cir. 2004)).

[113] Fed. R. Civ. P. 12(b)(6).

[114] *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982).

[115] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[116] *Twombly*, 550 U.S. at 555.

[117] *Iqbal*, 556 U.S. at 663 (citing *Twombly*, 550 U.S. at 556).

On a motion to dismiss, asserted claims are liberally construed in favor of the claimant, and all facts pleaded are taken as true.[118] However, although required to accept all "well-pleaded facts" as true, a court is not required to accept legal conclusions as true.[119] "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."[120] Similarly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" will not suffice.[121] The complaint need not contain detailed factual allegations, but it must offer more than mere labels, legal conclusions, or formulaic recitations of the elements of a cause of action.[122] That is, the complaint must offer more than an "unadorned, the-defendant-unlawfully-harmed-me accusation."[123] From the face of the complaint, there must be enough factual matter to raise a reasonable expectation that discovery will reveal evidence as to each element of the asserted claims.[124] If factual allegations are insufficient to raise a right to relief above the speculative level, or if it is apparent from the face of the complaint that there is an "insuperable" bar to relief, the claim must be dismissed.[125]

"[T]he central issue is whether, in the light most favorable to the plaintiff, the complaint states a valid claim for relief."[126] In ruling on a 12(c) motion, "[p]leadings should be construed

---

[118] *Leatherman v. Tarrant Cnty. Narcotics Intel. & Coordination Unit*, 507 U.S. 163, 164 (1993); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322–23 (2007).

[119] *Iqbal*, 556 U.S. at 678–79.

[120] *Id.* at 679.

[121] *Id.* at 678.

[122] *Id.*

[123] *Id.*

[124] *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 257 (5th Cir. 2009).

[125] *Carbe v. Lappin*, 492 F.3d 325, 328 n.9 (5th Cir. 2007); *Moore v. Metro. Hum. Serv. Dist.*, No. 09-6470, 2010 WL 1462224, at * 2 (E.D. La. Apr. 8, 2010) (Vance, J.) (citing *Jones v. Bock*, 549 U.S. 199, 215 (2007)).

[126] *Great Plains Tr. Co.*, 313 F.3d at 312 (alteration in original) (quoting *Hughes v. Tobacco Inst., Inc.*, 278

liberally," and judgment is appropriate "only if there are no disputed issues of fact and only questions of law remain."[127] The Court must "accept all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff," but need not "accept as true conclusory allegations or unwarranted deductions of fact."[128] The Court "may dismiss a claim when it is clear that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief."[129]

## IV. Analysis

The Court begins its analysis with the Section 1983 claims. It will then proceed to analyze the claims under other federal statutes and under Louisiana law.

### A.    Section 1983 Claims

#### 1.    Legal Standard on Section 1983 Claims

To bring a claim under 42 U.S.C. § 1983, a plaintiff is required to allege facts demonstrating that: (1) the defendant violated the Constitution or federal law; and (2) that the defendant was acting under the color of state law while doing so.[130] Section 1983 reads, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . [131]

---

F.3d 417, 420 (5th Cir. 2001)).

[127] *Id.* (quoting *Hughes*, 278 F.3d at 420).

[128] *Id.* at 312–13 (first quoting *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999); then quoting *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (2000)).

[129] *Id.* at 312 (quoting *Jones*, 188 F.3d at 324).

[130] *See Atteberry v. Nocona Gen. Hosp.*, 430 F.3d 245, 252–53 (5th Cir. 2005).

[131] 42 U.S.C. § 1983.

Breaud brings Section 1983 claims against Cantrell and Davis in both their individual and official capacities. She also brings a claim against the City of New Orleans. Defendants argue for dismissal of all claims. The Court begins by analyzing the official capacity claims against Cantrell and Davis and the claim against the City of New Orleans.

### 2.    Official Capacity Claims and Claims Against the Municipality

With respect to a Section 1983 claim against a municipality, no liability exists for governmental entities based on vicarious liability or *respondeat superior*.[132] Supervisory officials also "may not be found vicariously liable for the actions of their subordinates" under Section 1983.[133] Under *Monell*, "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury [] the government as an entity is responsible under § 1983."[134] Moreover, "[a] § 1983 plaintiff [] may be able to recover from a municipality without adducing evidence of an affirmative decision by policymakers if able to prove that the challenged action was pursuant to a state 'custom or usage.'"[135] In order to establish a Section 1983 claim against a municipality, the official policy must be the cause and moving force of the constitutional violation.[136] Additionally, the "policymaker must have either actual or constructive knowledge of the alleged policy."[137]

A pattern can be considered tantamount to an official policy if the pattern is "so common

---

[132] *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 693 (1978).

[133] *Hinojosa v. Livingston*, 807 F.3d 657, 668 (5th Cir. 2015).

[134] *Monell*, 436 U.S. at 694.

[135] *Pembaur v. City of Cincinnati*, 475 U.S. 469, 484 (1986).

[136] 436 U.S. 658, 694 (1978).

[137] *Cox v. City of Dallas*, 430 F.3d 734, 748–49 (5th Cir. 2005) (citing *Piotrowski v. City of Houston*, 237 F.3d 567, 579 (5th Cir. 2001)).

and well-settled as to constitute a custom that fairly represents municipal policy."[138] The incidents relied upon must have occurred prior to the alleged misconduct and "must have occurred for so long or so frequently that the course of conduct warrants the attribution to the governing body of knowledge that the objectionable conduct is the expected, accepted practice of city employees."[139] The prior incidents must point to the specific violation alleged in the case at bar.[140]

Liability may also exist where the action of the policymaker violated a constitutional right or where the policymaker failed to act to control its agents when it was "so obvious, and the inadequacy [of existing practice] so likely to result in the violation of constitutional rights, that the policymake[r] ... can reasonably be said to have been deliberately indifferent to the need."[141] Deliberate indifference of this sort is a stringent test, and "a showing of simple or even heightened negligence will not suffice" to prove municipal culpability.[142] The single-incident exception is a very narrow one that the Fifth Circuit has been reluctant to expand.[143]

Defendants assert Breaud failed to plausibly allege a claim against them in their official capacities under *Monell*.[144] Breaud contends she has alleged a *de facto* policy, custom, and practice

---

[138] *Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 850 (5th Cir. 2009) (quoting *Piotrowski*, 237 F.3d at 578).

[139] *Webster v. City of Houston,* 735 F.2d 838, 841 (5th Cir.1984) (en banc).

[140] *Peterson*, 588 F.3d at 851 (citing *Estate of Davis ex rel. McCully v. City of North Richland Hills*, 406 F.3d 375, 383 (5th Cir. 2005)).

[141] *Piotrowski v. City of Houston*, 237 F.3d 567, 571 (5th Cir. 2001) (citing *Bennett v. City of Slidell*, 728 F.2d 762, 768 n. 3 (5th Cir. 1984)).

[142] *Id*. (citing *Bryan County*, 520 U.S. at 407).

[143] *See Pineda v. City of Houston*, 291 F.3d 325, 334–35 (5th Cir. 2002) ("Charged to administer a regime without *respondeat superior*, we necessarily have been wary of finding municipal liability on the basis of [the single-incident] exception for a failure to train claim.").

[144] Rec. Doc. 47-1 at 7–9.

of Cantrell misusing departmental resources for her personal benefit.[145] Specifically, Breaud argues that Cantrell instructs NOPD officers to perform tasks for Cantrell for her personal gain.[146] Breaud asserts "[t]he fact that such collusion occurs among a number of City employees in repeated incidents demonstrates its widespread and pervasive nature."[147]

Although Breaud does not raise this issue, it is not apparent that *Monell* applies to the official capacity claims against Cantrell and Davis. Under Section 1983, "each Government official, his or her title notwithstanding, is only liable for his or her own misconduct."[148] In this case, Breaud alleges that Cantrell and Davis personally inflicted the constitutional violations. *Monell* applies in situations where a supervisory official was not personally involved in the alleged constitutional violations.[149]

*Monell* unquestionably applies to the claims against the City. However, Breaud's allegations against the City fall far short of the required standard. Breaud does not cite a single prior incident of similar conduct. The First Amended Complaint contains no factual allegations showing a pattern of misuse of departmental resources for personal gain. Breaud also does not argue that a policymaker was deliberately indifferent to any constitutional violation or related policy. Breaud's conclusory allegation is insufficient to establish liability against the City under *Monell*. However, dismissal is a harsh remedy, and the Court is cognizant of the Fifth Circuit's instruction that a motion to dismiss under Rule 12(b)(6) "is viewed with disfavor and is rarely

---

[145] Rec. Doc. 52 at 8.

[146] *Id.*

[147] *Id.*

[148] *Iqbal*, 556 U.S. at 677.

[149] *Hinojosa*, 807 F.3d at 668.

granted."[150] Short of granting the motion to dismiss, a court may grant Breaud leave to amend the complaint.[151] Therefore, the Court exercises its discretion to afford Breaud one additional opportunity to replead this claim.[152]

### 3.    Individual Capacity Claims and the Doctrine of Qualified Immunity

Cantrell and Davis argue that Breaud has not stated a claim against them in their individual capacities and they invoke the defense of qualified immunity. The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."[153] Qualified immunity is an "immunity from suit rather than a mere defense to liability."[154] In this manner, "[o]ne of the most salient benefits of qualified immunity is protection from pretrial discovery, which is costly, time-consuming, and intrusive."[155] Once a defendant invokes the defense of qualified immunity, the plaintiff carries the burden of demonstrating its inapplicability.[156]

In *Saucier v. Katz*, the Supreme Court set forth a two-part framework for analyzing whether a defendant was entitled to qualified immunity.[157] Part one asks the following question: "Taken in

---

[150] *Beanal v. Freeport–McMoran, Inc.*, 197 F.3d 161, 164 (5th Cir. 1999).

[151] *See Carroll v. Fort James Corp.*, 470 F.3d 1171, 1175 (5th Cir. 2006) (quoting *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 597–98 (5th Cir. 1981)).

[152] The parties are also encouraged to submit additional briefing on whether the *Monell* standard applies to the official capacity claims against Cantrell and Davis.

[153] *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

[154] *Pearson v. Callahan*, 555 U.S. 223, 237 (2009).

[155] *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012).

[156] *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009).

[157] 533 U.S. 194 (2001).

the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?"[158] Part two inquires whether the allegedly violated right is "clearly established" in that "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."[159] The Court does not have to address these two questions sequentially; it can proceed with either inquiry first.[160]

Commencing with the second prong of the *Saucier* framework, the Court must determine whether Breaud has alleged a violation of a clearly established constitutional right. When deciding whether the right allegedly violated was "clearly established," the Court asks whether the law so clearly and unambiguously prohibited the conduct such that a reasonable official would understand that what he was doing violated the law.[161] "Answering in the affirmative requires the court to be able to point to controlling authority—or a robust consensus of persuasive authority—that defines the contours of the right in question with a high degree of particularity. This requirement establishes a high bar."[162] When there is no controlling authority specifically prohibiting a defendant's conduct, the law is not clearly established for the purposes of defeating qualified immunity.[163]

---

[158] *Id.* at 201.

[159] *Id.* at 202.

[160] *See Pearson*, 555 U.S. at 236 ("On reconsidering the procedure required in *Saucier*, we conclude that, while the sequence set forth there is often appropriate, it should no longer be regarded as mandatory."); *see also Cutler v. Stephen F. Austin State Univ.*, 767 F.3d 462, 469 (5th Cir. 2014).

[161] *May v. Strain*, 55 F.Supp.3d 885, 897 (E.D. La. 2014) (Brown, J.) (citing *Wyatt v. Fletcher*, 718 F.3d 496, 503 (5th Cir. 2014)).

[162] *Id.*

[163] *Id.*

4.    **Violation of Due Process and the Right to Privacy**

In the Amended Complaint, Breaud alleges that "Defendants Cantrell, Davis, other City of New Orleans employees, and unnamed Defendants John/Jane Does violated Anne Breaud's privacy and due process rights by obtaining Breaud's private personal information under knowingly false pretenses, where in-turn, Defendants Cantrell and Davis disseminated it publicly by including it (unredacted) in Cantrell's Petition for Protection."[164]

Defendants argue that Breaud's "vague allegation of a violation of due process" fails to state a claim.[165] Defendants further urge that there is not a constitutional right to privacy for the type of information typically found on driver's licenses or arrest records.[166] In opposition, Breaud asserts she has a fundamental right to privacy that can only be abridged through due process.[167] Breaud asserts Cantrell and Davis infringed on her inherent right to privacy by recklessly and wantonly publishing her unredacted personal information, including her date of birth, social security number, and an allegation that Breaud "has a history of assault," in the state court Petition for Protection.[168]

The United States Constitution does not explicitly mention the right to privacy. Nevertheless, the Supreme Court has recognized that a right to personal privacy exists under the Due Process Clause of the Fourteenth Amendment.[169] The right to privacy consists of two

---

[164] Rec. Doc. 45 at 22.

[165] Rec. Doc. 47-1 at 5.

[166] *Id.* at 5–6.

[167] Rec. Doc. 52 at 4.

[168] *Id.*

[169] *Whalen v. Roe*, 429 U.S. 589, 599 (1977).

interrelated strands: "One is the individual interest in avoiding disclosure of personal matters, and another is the interest in independence in making certain kinds of important decisions."[170] The interest in avoiding disclosure of personal matters, which is "also known as the 'confidentiality branch' of substantive due process privacy rights,"[171] is at issue in this case. "There is no Fifth Circuit authority on what types of disclosures are personal enough to trigger the protection of the confidentiality branch, and . . . 'the contours of the confidentiality branch are murky.'"[172]

In *Meadows v. Lake Travis Independent School Dist.*, the Fifth Circuit considered a challenge to a school district policy requiring all visitors to present a state-issued photo identification card before entering secure areas of the school where children were present.[173] The Fifth Circuit held that the parents did not have a constitutionally protected right to privacy in the information contained on their driver's licenses.[174] Additionally, even if the information were constitutionally protected, the court noted that the State had "erected adequate safeguards to ensure the privacy of the information."[175]

Numerous federal courts confronted with this issue have similarly found that accessing or disclosing an individual's driver's license information does not give rise to a constitutional injury.[176] Similarly, courts have held that there is no constitutional right to privacy with respect to

---

[170] *Id.*

[171] *Zaffuto v. City of Hammond*, 308 F.3d 485, 489 (5th Cir.), *on reh'g in part*, 313 F.3d 879 (5th Cir. 2002).

[172] *Id.* at 490 (quoting *Scheetz v. The Morning Call, Inc.*, 946 F.2d 202, 206 (3d Cir. 1991)).

[173] *Meadows v. Lake Travis Indep. Sch. Dist.*, 397 F. App'x 1, 4 (5th Cir. 2010).

[174] *Id.*

[175] *Id.*

[176] *Loeffler v. City of Anoka*, 79 F. Supp. 3d 986 (D. Minn. 2015) (driver did not have a constitutional privacy interest in the driver's license information allegedly accessed); *Myers v. Aitkin County*, 2014 WL 7399182 (D. Minn. 2014) (no constitutional violation in law enforcement officers accessing the driver's license information of the plaintiff-attorney 84 times); *Rasmusson v. Chisago County*, 991 F. Supp. 2d 1065 (D. Minn. 2014) (driver did not

arrest records.[177] Courts have also held that the disclosure of a social security number does not violate the constitutional right to privacy.[178] Therefore, the Court finds Breaud has not stated a claim for a violation of her constitutional right to privacy.

Because Breaud fails to adequately plead a Fourteenth Amendment violation to survive Defendants' motion, the Court need not address whether Cantrell and Davis are entitled to qualified immunity on the same claim. However, the Court notes that Breaud has not shown Cantrell and Davis's conduct was objectively unreasonable in light of clearly established law.

Allowing an amendment to this claim appears to be futile, considering the authority cited above. Nevertheless, short of granting a motion to dismiss, the Court may grant Breaud leave to file a Second Amended Complaint. The Fifth Circuit in *Schultea v. Wood* explained that once a defendant asserts qualified immunity, a district court may order the plaintiff to submit a reply pursuant to Federal Rule of Civil Procedure 7(a)(7) after evaluating the complaint under the ordinary pleading standard.[179] Therefore, the Fifth Circuit has generally found that, when faced with a motion to dismiss, a district court ought to allow a plaintiff to file a Rule 7(a)(7) reply before dismissing a case on the basis of qualified immunity.[180] Pursuant to *Schultea*, this reply "must be

---

have a privacy interest in driver's license information allegedly accessed by county police officers).

[177] *Davies v. Sheriff of Orange County, Florida*, 2015 WL 12839779 (M.D. Fla. 2015) (the county's alleged policy of publishing arrest records did not violate the Fourteenth Amendment because there is no constitutionally protected privacy interest in the confidentiality of an arrest); *August v. City of Los Angeles*, 848 F.2d 1242 (9th Cir. 1988) (there is no federal right to have arrest records expunged and the dissemination of arrest record information does not violate the right to privacy); *Hammons v. Scott*, 423 F. Supp. 618 (N.D. Cal. 1976) (maintenance and dissemination of arrest records was not violative of the constitutional right of privacy or constitutional due process).

[178] *Hayes v. Campbell Co. Det. Center*, 2020 WL 4455114 (E.D. Ky. 2020) (disclosure of a prisoner's social security number did not violate the Fourteenth Amendment); *Spurlock v. Ashley County*, 281 Fed. App'x. 628 (8th Cir. 2008) (the disclosure of the plaintiff's social security number did not violate the constitutional right to privacy); *Lambert v. Hartman*, 517 F.3d 433 (6th Cir. 2008) (public disclosure of social security number on the website did not pose a risk of physical harm so as to implicate the fundamental right to personal security, even though it constituted a serious nonphysical personal invasion).

[179] *Schultea v. Wood*, 47 F.3d 1427, 1432 (5th Cir. 1995).

[180] *See Todd v. Hawk*, 66 F.3d 320 (5th Cir. 1995) ("*Schultea* makes it clear that this two-step process—

tailored to the assertion of qualified immunity and fairly engage its allegations."[181] Accordingly, considering this precedent, the Court will deny Defendants' motion to the extent they seek dismissal of Breaud's privacy claim and grant Breaud leave to amend the complaint to allege facts "tailored to the assertion of qualified immunity."[182]

### 5.    First Amendment Retaliation

The Amended Complaint alleges that Breaud engaged in protected speech on a matter of public concern when she took the photographs of Cantrell and Vappie and then forwarded the photographs to the Metropolitan Crime Commission.[183] As a result of this protected speech, Breaud alleges she was subjected to retaliation when Cantrell, with the assistance of Davis, filed the May 10, 2024 Petition for Protection.[184] Breaud also alleges that the protected activity was a substantial and/or motivating factor in Cantrell and Davis's actions.[185]

Defendants argue Breaud did not plausibly allege she was engaged in protected activity under the First Amendment when she photographed Cantrell on a restaurant balcony and Breaud failed to plausibly allege that the conduct was a matter of public concern.[186] In opposition, Breaud contends her taking of the photographs was protected by the First Amendment.[187] She argues

---

requiring the plaintiff to file a short and plain statement of his claim pursuant to Rule 8(a)(2) followed by a more particularized reply pursuant to Rule 7—is the preferred procedure preceding consideration of a motion to dismiss on grounds of qualified immunity.").

[181] *Schultea*, 47 F.3d at 1433.

[182] *Id.*

[183] Rec. Doc. 45 at 25.

[184] *Id.*

[185] *Id.* at 26.

[186] Rec. Doc. 47-1 at 6.

[187] Rec. Doc. 52 at 5.

Cantrell's filing of the state court Petition for Protection was a retaliatory action and a failed attempt to shield the public from Cantrell's indiscretions.[188]

"The First Amendment prohibits not only direct limits on individual speech but also adverse governmental action against an individual in retaliation for the exercise of protected speech activities."[189] To state a retaliation claim, Breaud must show: "(1) [s]he was engaged in constitutionally protected activity, (2) the defendants' actions caused [her] to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity, and (3) the defendants' adverse actions were substantially motivated against the plaintiff's exercise of constitutionally protected conduct."[190]

Applying this framework, Breaud has alleged sufficient facts to state a claim for First Amendment retaliation. In a recent appeal of the state district court's order striking Cantrell's Petition for Protection, the Louisiana Fourth Circuit Court of Appeal held that Breaud was within her constitutionally protected rights when she observed and photographed Cantrell and Vappie as they were seated at a table on the balcony of a restaurant just across from Breaud's residence.[191] The court held Breaud's activities "were plainly and fundamentally protected by the First Amendment."[192] Consistent with the reasoning of the Louisiana appellate court, this Court finds Breaud has adequately pled the first element.

Under the second element, Breaud must allege not only that a person of ordinary firmness

---

[188] *Id.* at 5–6.

[189] *Keenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir. 2002).

[190] *Mills v. City of Bogalusa*, 112 F. Supp. 3d 512, 516 (E.D. La. 2015) (Berrigan, J.) (citing *Keenan*, 290 F.3d at 258).

[191] *Cantrell v. Breaud*, 2024-0716 (La. App. 4 Cir. 6/9/25), 2025 WL 1635529, at *7.

[192] *Id.*

would be chilled from engaging in speech because of Defendants' actions, but also that Breaud herself suffered an injury, specifically that Breaud's "exercise of free speech has been curtailed."[193] "A required showing of actual injury does not necessarily mean that plaintiffs must cease criticizing the government officials altogether in order to have a claim for retaliation."[194] "The effect on freedom of speech may be small, but since there is no justification for harassing people for exercising their constitutional rights it need not be great in order to be actionable."[195] Breaud has alleged that her speech was curtailed as a result of Defendants' actions. Breaud alleges she suffered economic damages in having to defend the Petition for Protection.[196] She also alleges that she suffered noneconomic damages in the form of pain and suffering, mental and emotional distress, humiliation, embarrassment, inconvenience, and loss of enjoyment of life.[197]

Under the third element, Breaud alleges Defendants' adverse actions were substantially motivated against Breaud's exercise of constitutionally protected conduct. Breaud alleges that Cantrell filed the Petition for Protection in retaliation against Breaud due to the public scrutiny that the photographs caused. According to the Amended Complaint, Cantrell waited a full month after the photographs were taken before she filed a police report with the New Orleans Police Department.[198] The police report was filed the day after a news segment aired highlighting Cantrell's alleged relationship with Vappie.[199] Breaud also alleges that Cantrell fabricated the

---

[193] *McLin v. Ard*, 866 F.3d 682, 696 (5th Cir. 2017) (quoting *Keenan*, 290 F.3d at 259).

[194] *Id.* at 697 (quoting *Keenan*, 290 F.3d at 260).

[195] *Id.* (quoting *Keenan*, 290 F.3d at 259).

[196] Rec. Doc. 45 at 26.

[197] *Id.*

[198] *Id.* at 8.

[199] *Id.*

police report to bolster the Petition for Protection.[200] Therefore, Breaud has adequately alleged that Defendants' adverse actions were substantially motivated against Breaud's exercise of constitutionally protected conduct.

Cantrell and Davis also invoke qualified immunity as to this claim. Breaud has not adequately responded to the qualified immunity defense or cited any authority to show Cantrell and Davis's conduct was objectively unreasonable in light of clearly established law. As discussed above, under *Schultea v. Wood*, once a defendant asserts qualified immunity, a district court may order the plaintiff to submit a reply pursuant to Federal Rule of Civil Procedure 7(a)(7) after evaluating the complaint under the ordinary pleading standard.[201] Accordingly, considering this precedent, the Court will deny Defendants' motion to the extent they seek dismissal of Breaud's First Amendment retaliation and grant Breaud leave to amend the complaint to allege facts "tailored to the assertion of qualified immunity."[202]

**B.    Claim Under the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030**

Breaud alleges that Defendants violated the CFAA by soliciting, obtaining and/or using information about Breaud derived from the National Crime Information Center ("NCIC") in the absence of a permissible.[203] Defendants contend the text of the CFAA does not reference any "permissible uses."[204] According to Defendants, Breaud failed to allege any Defendant exceeded

---

[200] *Id.* at 13.

[201] *Schultea*, 47 F.3d at 1432.

[202] *Id.*

[203] Rec. Doc. 45 at 24.

[204] Rec. Doc. 47-1 at 9–10.

their authorized access of any computer system.[205] Defendants further argue the CFAA does not include any provision creating a right of action for "publishing" information as alleged by Breaud.[206] Breaud argues she has stated a claim under the CFAA because the statute regulates the improper dissemination of information, even if it is legally obtained.[207]

The CFAA subjects an individual to criminal and civil liability if he or she "intentionally accesses a computer without authorization or exceeds authorized access," and thereby obtains computer information.[208] In *Van Buren v. United States*, a police sergeant was charged under the CFAA for allegedly using this patrol-car computer to retrieve information regarding a license plate number improperly.[209] The Supreme Court held this did not exceed authorized access under the CFAA, explaining:

> In sum, an individual "exceeds authorized access" when he accesses a computer with authorization but then obtains information located in particular areas of the computer—such as files, folders, or databases—that are off limits to him. The parties agree that Van Buren accessed the law enforcement database system with authorization. The only question is whether Van Buren could use the system to retrieve license-plate information. Both sides agree that he could. Van Buren accordingly did not "excee[d] authorized access" to the database, as the CFAA defines that phrase, even though he obtained information from the database for an improper purpose.[210]

Breaud suggests that the statute regulates the improper dissemination of information, even if it is legally obtained.[211] However, the statute does not mention dissemination, and Breaud does

---

[205] *Id.* at 10.

[206] *Id.* at 11.

[207] Rec. Doc. 52 at 9.

[208] 18 U.S.C. § 1032(a)(2).

[209] 593 U.S. 374 (2021).

[210] *Id.* at 396.

[211] Rec. Doc. 52 at 9.

not cite any authority to support this assertion. Therefore, Breaud has not stated a claim under the CFAA.

Breaud also fails to adequately allege loss or damage under the CFAA. The statute provides that "[a]ny person who suffers damage or loss by reason of a violation of this section may maintain a civil action against the violator to obtain compensatory damages and injunctive relief or other equitable relief."[212] A civil action may be brought only if the conduct involves one of the following factors:

> (I)    loss to 1 or more persons during any 1-year period . . . aggregating at least $5,000 in value;
> (II)   the modification or impairment, or potential modification or impairment, of the medical examination, diagnosis, treatment, or care of 1 or more individuals;
> (III)  physical injury to any person;
> (IV)   a threat to public health or safety;
> (V)    damage affecting a computer used by or for an entity of the United States Government in furtherance of the administration of justice, national defense, or national security.[213]

The CFAA defines "loss" as "any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service."[214] The CFAA defines "damage" to mean "any impairment to the integrity or availability of data, a program, a system, or information."[215] Caselaw has "consistently interpreted the loss provision to encompass only the costs incurred as a result of investigating or remedying damage to a computer, or costs incurred

---

[212] 18 U.S.C. § 1032(g).

[213] *Id.* at § 1032(c)(4)(A)(i).

[214] *Id.* at § 1032(e)(11).

[215] *Id.* at § 1032(e)(8).

because the computer's service was interrupted."[216] Breaud does not allege any facts showing a loss of at least $5,000 for investigating or remedying damage to a computer or costs incurred because a computer's service was interrupted. Therefore, Breaud has not stated a claim under the CFAA.

It appears futile to allow Breaud to amend this claim, as the conduct at issue in this case appears to fall outside the protections afforded under the CFAA. However, dismissal is a harsh remedy, and the Court is cognizant of the Fifth Circuit's instruction that a motion to dismiss under Rule 12(b)(6) "is viewed with disfavor and is rarely granted."[217] Short of granting a motion to dismiss, a court may grant Breaud leave to amend the complaint.[218] Therefore, the Court exercises its discretion to afford Breaud one additional opportunity to replead this claim.

## C.    Claim Under the Electronic Communication's Privacy Act ("ECPA"), 18 U.S.C. §§ 2510–2523

Breaud alleges that Defendants violated the ECPA "by soliciting, obtaining and/or using the information derived from the National Crime Information Center (NCIC) or other databases used by law enforcement agencies in the absence of a permissible use."[219] Defendants claim the ECPA is a statute directed at wiretapping, and Breaud has not pled any facts establishing there was any wiretap of Breaud's communications.[220] Breaud argues she has stated a claim under the ECPA because the statute regulates the improper dissemination of information, even if it is legally

---

[216] *M-I LLC v. Stelly*, 733 F. Supp. 2d 759, 779 (S.D. Tex. 2010) (citing *Nexans Wires S.A. v. Sark–USA, Inc.*, 319 F.Supp.2d 468, 475 (S.D.N.Y. 2004), *aff'd*, 166 Fed. App'x. 559, 562–63 (2d Cir. 2006)).

[217] *Beanal v. Freeport–McMoran, Inc.*, 197 F.3d 161, 164 (5th Cir. 1999).

[218] *See Carroll v. Fort James Corp.*, 470 F.3d 1171, 1175 (5th Cir. 2006) (quoting *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 597–98 (5th Cir. 1981)).

[219] Rec. Doc. 45 at 24–25.

[220] Rec. Doc. 47-1 at 11.

obtained.[221]

Although the ECPA is "primarily a criminal provision,"[222] 18 U.S.C. § 2520(a) expressly allows private civil suits by "any person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of this chapter."[223] The ECPA "protects wire, oral, and electronic communications while those communications are being made, are in transit, and when they are stored on computers."[224] The Act primarily applies to wiretapping, but it also "applies to email, telephone conversations, and data stored electronically."[225]

It is not apparent that the ECPA could conceivably apply in this case. However, it is impossible for the Court to analyze this claim as it is not clear from the Amended Complaint or the opposition to the instant motion which section of the ECPA Breaud is alleging Defendants violated. Therefore, rather than dismissing this claim, the Court will grant Breaud one additional opportunity to replead the claim, specifying the specific section(s) of the ECPA Breaud alleges were violated.

**D.    Claim under the Driver's Privacy Protection Act ("DPPA"), 18 U.S.C. § 2721 et seq.**

Breaud alleges Defendants violated the DPPA by soliciting, obtaining, and or using the information derived from Officer St. Martin, Officer Guzman and other John/Jane Does in the absence of a permissible use.[226] Accepting as true Breaud's allegation that Officer St. Martin or

---

[221] Rec. Doc. 52 at 9.

[222] *DIRECTV, Inc. v. Bennett*, 470 F.3d 565, 567 (5th Cir. 2006).

[223] 18 U.S.C. § 2520.

[224] Electronic Communications Privacy Act of 1986 (ECPA), https://bja.ojp.gov/program/it/privacy-civil-liberties/authorities/statutes/1285#:~:text=The%20ECPA%2C%20as%20amended%2C%20protects,conversations%2C%20and%20data%20stored%20electronically.

[225] *Id.*

[226] Rec. Doc. 45 at 23.

Officer Guzman accessed Breaud's private information in the DMV database, Defendants assert they were acting pursuant to a permissible use in their capacity as law enforcement officers while carrying out their functions as law enforcement officers.[227] Because Cantrell advised that she was planning to pursue legal action against Breaud, Defendants assert any alleged disclosure of the matter would have been permissible.[228] Breaud asserts she has stated a claim under the DPPA because she alleges that Cantrell included Breaud's private personal information obtained from the NOPD in the state court Petition for Protection.[229]

The essential function of the DPPA is to establish a "regulatory scheme that restricts the States' ability to disclose a driver's personal information without the driver's consent."[230] The DPPA generally prohibits any state DMV, or officer, employee, or contractor thereof, from "knowingly disclos[ing] or otherwise mak[ing] available to any person or entity personal information about any individual obtained by the department in connection with a motor vehicle record."[231] The DPPA defines "personal information" as any information "that identifies an individual, including an individual's photograph, social security number, driver identification number, name, address (but not the 5-digit zip code), telephone number, and medical or disability information," but not including "information on vehicular accidents, driving violations, and driver's status."[232] A "motor vehicle record" is defined as "any record that pertains to a motor

---

[227] Rec. Doc. 47-1 at 14.

[228] *Id.*

[229] Rec. Doc. 52 at 9.

[230] *Reno v. Condon*, 528 U.S. 141, 144 (2000).

[231] *Id.* (quoting 18 U.S.C. § 2721(a)).

[232] *Id.* (quoting 18 U.S.C. § 2725(3)).

vehicle operator's permit, motor vehicle title, motor vehicle registration, or identification card issued by a department of motor vehicles."[233]

The Act states further that "[it] shall be unlawful for any person knowingly to obtain or disclose personal information, from a motor vehicle record, for any use not permitted under section 2721(b) of this title."[234] The ban on obtainment and disclosure of personal information is subject to a number of statutory exceptions.[235] The statute allows for "[p]ermissible uses" of such information, including:

> For use in connection with any civil, criminal, administrative, or arbitral proceeding in any Federal, State, or local court or agency or before any self-regulatory body, including the service of process, investigation in anticipation of litigation, and the execution or enforcement of judgments and orders, or pursuant to an order of a Federal, State, or local court.[236]

"An authorized recipient of personal information . . . may resell or redisclose the information" for a "permissible use."[237] To state a claim under the DPAA, a plaintiff must allege that (1) a defendant knowingly obtained, disclosed, or used personal information; (2) from a motor vehicle record; (3) for a purpose not permitted.[238]

Even assuming Breaud's personal information was obtained from the DMV database, Breaud has not shown that Defendants violated the DPPA. The statute allows for personal information to be disclosed in connection with a civil proceeding, including for investigation in

---

[233] *Id.* (quoting 18 U.S.C. § 2725(1)).

[234] 18 U.S.C. § 2722(a).

[235] *Reno*, 528 U.S. at 145.

[236] 18 U.S.C. § 2721(b)(4).

[237] 18 U.S.C. § 2721(c).

[238] *Taylor v. Acxiom Corp.*, 612 F.3d 325, 335 (5th Cir. 2010).

anticipation of litigation. Therefore, the alleged disclosure by NOPD officers to Cantrell would not have violated the DPPA. Breaud asserts Cantrell violated the DPPA by including Breaud's private, personal information obtained from the New Orleans Police Department in her May 10, 2024 Petition for Protection. However, the DPPA allows a recipient to redisclose the information for a permissible use, and disclosure in connection with a civil proceeding is a permissible use. The allegation that Cantrell included Breaud's social security number and date of birth in the Petition for Protection without redaction is troubling. However, Breaud does not cite any authority to show how including the information in the Petition for Protection would violate the DPPA. Therefore, Breaud has not stated a claim under the DPPA. Rather than dismissing this claim, the Court will grant Breaud one additional opportunity to replead the claim.

### E.    State Law Claims

In the Amended Complaint, Breaud brings claims under Louisiana law for defamation, abuse of process, abuse of right, intentional infliction of emotional distress, malicious prosecution, and general tort liability (negligence).

Defendants raised an argument for dismissal as to each of these claims, but Breaud only responded regarding the malicious prosecution and negligence claims. It is not clear to the Court whether Breaud intended to abandon the other claims. Considering that the Court has granted Breaud another opportunity to amend the Complaint, the Court will grant Breaud an opportunity to clarify whether she is voluntarily dismissing the defamation, abuse of process, abuse of right, and intentional infliction of emotional distress claims. The Court proceeds to address the parties arguments on the malicious prosecution and negligence claims.

#### 1.    Malicious Prosecution Claim

In order to prove a claim for malicious prosecution, a plaintiff must show: "(1) the commencement or continuance of an original criminal or civil proceeding; (2) its legal causation

by the present defendant in the original proceeding; (3) its bona fide termination in favor of the

present plaintiff; (4) the absence of probable cause for such proceeding; (5) the presence of malice

therein; and (6) damage conforming to legal standards resulting to plaintiff."[239]

Defendants argue Breaud fails to allege facts to show the absence of probable cause or

presence of malice.[240] Breaud contends Cantrell acted without probable case because no reasonable

person could have believed Cantrell's allegation that Breaud had over 800 hours of video of

Cantrell.[241] Breaud also argues she has adequately alleged malice because Cantrell filed the

Petition only two days after the second photograph of Cantrell and Vappie was taken, "a picture

that Cantrell was certain would call for Vappie to again be reassigned to another position."[242]

"The test for probable cause is whether a reasonable person would have acted the same

under the circumstances."[243] "The existence of probable cause depends on the particular facts of

the case. It does not depend merely upon the actual state of facts, but upon the defendant's honest

belief of the facts in making the charge against the plaintiff."[244] "Public policy requires that all

persons have a right to resort to the courts for redress of wrongs and such persons are protected by

the law when they act in good faith and upon reasonable grounds."[245]

Breaud alleges that the Petition for Protection was "riddled with false and unsubstantiated

---

[239] *Lemoine v. Wolfe*, 2014-1546 (La. 3/17/15); 168 So. 3d 362, 367 (quoting *Jones v. Soileau*, 448 So. 2d 1268, 1271 (La. 1984)).

[240] Rec. Doc. 47-1 at 23.

[241] Rec. Doc. 52 at 15.

[242] *Id.* at 16.

[243] *Aucoin v. Aetna Cas. & Sur. Co.*, 520 So.2d 795, 799 (La. App. 3rd Cir. 1987) (internal citations omitted).

[244] *Id.*

[245] *Id.*

accusations of stalking and harassing, many of which were outrageous fabrications and outright lies."[246] For example, in the Petition for Protection, Cantrell alleged that Breaud "has been the source of photographs and videos (over 800 hours of video) that has been used to attack, dehumanize, weaponize my character and has caused harm; risking my overall safety. [Breaud] has a history of assault and I am not safe."[247] Breaud alleges these statements "are patently false and in addition to being made in reckless disregard for the truth are Per Se Defamatory."[248] Breaud alleges that "the hundreds of hours of videos for which Defendant Cantrell falsely attributes to Breaud and cites as previous incidents of harassment were captured on the City of New Orleans-installed security cameras that were installed as a result of Defendant Cantrell's conversion of the City's Upper Pontalba apartment into her own personal residence. . . ."[249] Accepting Breaud's allegations as true, she has plausibly alleged that Cantrell acted without probable cause.

Breaud has also plausibly alleged malice. "Malice exists when a charge is made with knowledge that it is false or with reckless disregard for the truth."[250] According to the Amended Complaint, Cantrell waited a full month after the photographs were taken before she filed a police report with the New Orleans Police Department.[251] The police report was filed the day after a news segment aired highlighting Cantrell's alleged relationship with Vappie.[252] Breaud also alleges that

---

[246] Rec. Doc. 45 at 3.

[247] *Id.* at 18, 51.

[248] *Id.* at 18.

[249] *Id.* at 19.

[250] *Aucoin*, 520 So.2d at 798.

[251] Rec. Doc. 45 at 8.

[252] *Id.*

Cantrell fabricated the police report to bolster the Petition for Protection.[253] In a recent opinion affirming the state trial court's order striking Cantrell's Petition for Protection from the record, the Louisiana Fourth Circuit Court of Appeal observed that the action "was clearly designed to suppress, restrain and prohibit [Breaud's] rights provided under the United States and Louisiana Constitutions, including the exercise of taking photos of a public figure in a public place."[254] At the motion to dismiss stage, Breaud has pled enough facts to support a claim for malicious prosecution.

### 2.    Negligence Claim

Louisiana courts conduct a "duty-risk analysis" to determine whether a defendant is liable for negligence.[255] To prevail on a negligence claim, a plaintiff must prove five elements: (1) the defendant had a duty to conform his conduct to a specific standard of care; (2) the defendant's conduct failed to conform to the appropriate standard of care; (3) the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries; (4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries; and (5) the defendant's conduct caused actual damages.[256] "While Louisiana law does impose a 'universal duty' on defendants in a negligence action to use 'reasonable care,' plaintiffs are still required to assert a 'specific standard' of care."[257] "The inquiry is whether the plaintiff has any law (statutory, jurisprudential, or arising from general principles

---

[253] *Id.* at 13.

[254] *Cantrell*, 2025 WL 1635529, at *6.

[255] La. Civ. Code art. 2315; *Lemann v. Essen Lane Daiquiris, Inc.*, 2005-1095 (La. 3/10/06), 923 So. 2d 627, 632–33 (citing *Mathieu v. Imperial Toy Corporation*, 94-0952 (La.11/30/94), 646 So.2d 318, 321); *see also Nagle v. Gusman*, 61 F. Supp. 3d 609, 620 (E.D. La. 2014) (Vance, J.).

[256] *Lemann*, 923 So. 2d at 633.

[257] *Butler v. Denka Performance Elastomer, L.L.C.,* 16 F.4th 427, 445 (5th Cir. 2021) (quoting *Lemann*, 923 So. 2d at 633).

of fault) to support the claim that the defendant owed him a duty."[258] "Whether a legal duty exists, and the extent of that duty, depends on the facts and circumstances of the case, and the relationship of the parties."[259]

Defendants argue Breaud has not stated a negligence claim because she does not allege Defendants failed to conform to a specific standard.[260] Breaud asserts she has adequately alleged a negligence claim by alleging that the Petition for Protection was wanton and reckless.[261] The Court agrees with Breaud that the factual allegations in the Amended Complaint are sufficient to state a claim for negligence. Breaud alleges that Defendants breached a standard of care arising from general principles of fault. In a motion to dismiss, the sole question is whether the complaint states a claim on which relief can be granted.[262] Breaud has clearly provided "grounds" for its "entitlement to relief."[263] As such, Breaud has stated a claim for negligence upon which relief could be granted.

### V. Conclusion

With respect to the federal claims, Breaud has not pled sufficient facts to state a claim against the City under *Monell*. Breaud also has not stated a claim for violations of the right to privacy, the CFAA, the ECPA, or the DPPA. Breaud has pled sufficient facts to state a claim for First Amendment retaliation, but she fails to adequately respond to the qualified immunity defense.

---

[258] *Lemann*, 923 So. 2d at 633.

[259] *Joseph v. Dickerson*, 1999-1046 (La. 1/19/00), 754 So. 2d 912, 916.

[260] Rec. Doc. 47-1 at 24.

[261] Rec. Doc. 52 at 17.

[262] *Columbia Broadcasting System v. U.S.*, 316 U.S. 407 (1942).

[263] *Twombly*, 550 U.S. at 545.

With respect to the state law claims, Breaud has adequately alleged claims for malicious prosecution and negligence under Louisiana law. It is unclear to the Court whether Breaud is abandoning the other state law claims alleged in the Amended Complaint. Therefore, the Court grants Breaud leave to file a Second Amended Complaint and Rule 7(a)(7) reply tailored to the qualified immunity defense. Accordingly,

**IT IS HEREBY ORDERED** that Motion to Dismiss Pursuant to Rule 12(c) and Qualified Immunity[264] is **DENIED WITHOUT PREJUDICE**.

**IT IS FURTHER ORDERED** that Breaud is granted leave to amend the complaint and a to file a Rule 7(a)(7) reply within fourteen days of this Order to cure the deficiencies noted, if possible. If upon amendment, Breaud fails to provide sufficient factual support for each element of each claim, upon motion by a party, the Court will dismiss the claims.

**NEW ORLEANS, LOUISIANA**, this __2nd__ day of July, 2025.

**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**

---

[264] Rec. Doc. 47.