UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| ANNE W. BREAUD | CIVIL ACTION |
| VERSUS | NO. 24-1865 |
| LATOYA W. CANTRELL, et al. | SECTION: "G"(1) |

### ORDER AND REASONS

Before the Court is Plaintiff Anne W. Breaud's ("Breaud") Motion to Determine Conflict-Free Representation.[1] The Motion arises out of Defendants LaToya W. Cantrell ("Cantrell"), Clifton M. Davis II ("Davis"), and the City of New Orleans' concurrent representation by the New Orleans City Attorney's Office.[2] Defendants oppose the motion.[3] Having considered the motion, the memoranda in support and in opposition, the record, and the applicable law, the Court denies the motion. At this stage of the litigation, Breaud has not shown that Defendants are directly adverse to each other or that there is a significant risk that the representation of one defendant will materially limit the lawyers' responsibilities to another defendant. However, Breaud has shown that a conflict of interest could arise in the future. A disqualification motion may be raised again, if necessary, after the stay of this litigation is lifted.

### I. Background

On Sunday, April 7, 2024, Breaud observed Cantrell, the Mayor of the City of New Orleans, "appearing to be enjoying a meal and a bottle of wine" with NOPD Officer Vappie on the

---

[1] Rec. Doc. 68.

[2] *Id.* at 2.

[3] Rec. Doc. 73.

1

balcony of Tableau Restaurant.[4] Breaud claims she captured two photographs of Cantrell and Vappie on the balcony.[5] After taking these pictures, Breaud asserts she forwarded them to Raphael Goyeneche, the President of the Metropolitan Crime Commission (the "Commission").[6] Thereafter, Breaud alleges the Commission reported the incident and provided the photographs to Deputy Chief Keith Sanchez of the NOPD's Public Integrity Bureau, requesting an investigation of Vappie's conduct with his protectee, Cantrell.[7] Breaud states that at some point shortly after the Commission's report to the NOPD Public Integrity Bureau, which occurred on April 12, 2024, various media outlets published the photographs Breaud captured of Cantrell and Vappie.[8]

Breaud asserts Cantrell filed a police report against Breaud on May 9, 2024, with Cantrell claiming she was being "harassed" and "followed" by Breaud, as well as claims that Cantrell felt "unsafe" because of Breaud.[9] As a result of the information Cantrell provided to the NOPD, Breaud claims her personal information was accessed, obtained, and provided to Cantrell by certain Defendants somewhere between May 9, 2024 and May 10, 2024.[10]

Cantrell then filed a Petition for Protection from Stalking or Sexual Assault (the "Petition for Protection") against Breaud in state court, which Breaud claims contained false and defamatory statements.[11] The state court issued a Temporary Restraining Order against Breaud, but ultimately

---

[4] Rec. Doc. 45 at 6–7.

[5] *Id.* at 7.

[6] *Id.* at 8.

[7] *Id.*

[8] *Id.*

[9] *Id.* at 11–12.

[10] *Id.* at 14.

[11] *Id.* at 16–17.

dismissed Cantrell's Petition for Protection.[12]

On July 26, 2024, Breaud filed a Complaint in this Court against Defendants Latoya W. Cantrell, the City of New Orleans, the New Orleans Police Department, Clifton Davis II, Victor Gant, Leslie D. Guzman, Ryan St. Martin, and John/Jane Does Numbers 1-5 for alleged "violation of her civil rights, the violation of federal law by individuals acting under color of law, and violations of state law, including defamation, abuse of process, abuse of right, intentional infliction of emotional distress, malicious prosecution, general tort liability and vicarious liability…"[13]

On September 10, 2024, Defendants filed a motion to stay in light of alleged open criminal and administrative investigations into certain named Defendants.[14] On October 16, 2024, the Court denied the motion because the fact or scope of an imminent criminal proceeding was merely speculative and there is a strong interest in the resolution of the case.[15]

On December 12, 2024, the Court granted an unopposed motion to dismiss all claims pending against the New Orleans Police Department.[16] On January 14, 2024, Defendants Cantrell, the City of New Orleans, Davis, Gant, Guzman, and St. Martin filed a first Motion to Dismiss Pursuant to Rule 12(c) and for Qualified Immunity.[17] On March 27, 2025, this Court granted Breaud leave to file an Amended Complaint.[18] The Amended Complaint withdrew all allegations

---

[12] *Id.* at 4, 20.

[13] Rec. Doc. 1 at 1.

[14] Rec. Doc. 10.

[15] Rec. Doc. 13.

[16] Rec. Doc. 21.

[17] Rec. Doc. 26.

[18] Rec. Doc. 44.

3

against Gant, Guzman, and St. Martin.[19] Therefore, the Defendants named in the Amended Complaint were Cantrell, the City of New Orleans, and Davis (collectively referred to hereafter as "Defendants").[20]

On April 10, 2025, Defendants filed a second Motion to Dismiss Pursuant to Rule 12(c) and for Qualified Immunity.[21] On July 2, 2025, the Court denied the motion and granted Breaud leave to amend the Complaint to address pleading deficiencies identified in the Order.[22] Breaud filed a Second Amended Complaint on July 16, 2025.[23] On July 30, 2025, Defendants filed a renewed Motion to Dismiss.[24]

On August 15, 2025, Cantrell was indicted by a grand jury in the Eastern District of Louisiana through a Superseding Indictment filed in the matter of *United States v. Jeffrey Paul Vappie II and LaToya Cantrell*, United States District Court for the Eastern District of Louisiana, Case No. 24-CR-165. The Superseding Indictment charges Cantrell with one count of conspiracy in violation of 18 U.S.C. § 371, twelve counts of wire fraud in violation of 18 U.S.C. § 1343, one count of conspiracy to obstruct justice in violation of 18 U.S.C. § 1512(k), one count of making a false statement in violation of 18 U.S.C. § 1001(a)(2), one count of obstruction of justice in violation of 18 U.S.C. § 1512(c)(1), and two counts of making a false declaration before a grand

---

[19] Rec. Doc. 45.

[20] *Id.*

[21] Rec. Doc. 47.

[22] Rec. Doc. 54.

[23] Rec. Doc. 55.

[24] Rec. Doc. 60.

jury in violation of 18 U.S.C. § 1623.[25]

On August 18, 2025, Defendants filed a Second Motion to Stay the Proceedings.[26] Breaud did not oppose the motion to stay. She indicated in another filing that she agrees the circumstances have significantly changed since the First Motion to Stay Proceedings was denied by the Court in October 2024, and she agrees a stay is appropriate.[27]

On August 30, 2025, Breaud filed the instant Motion to Determine Conflict-Free Representation.[28] The Court expedited the submission date so that the motion could be decided with the Second Motion to Stay.[29] On September 3, 2025, Defendants filed an opposition to the motion.[30]

## II. Parties' Arguments

### A.  *Breaud's Arguments in Support of the Motion*

Breaud asserts that the City Attorney's Office's representation of Defendants creates an actual concurrent conflict of interest under Louisiana Rule of Professional Conduct 1.7.[31] Breaud contends that representation of Cantrell and Davis is directly adverse to representation of the City under Rule 1.7(a)(1).[32] Alternatively, Breaud argues that the concurrent representation violates Rule 1.7(a)(2) because there is a significant risk that the representation of one or more clients will

---

[25] Rec. Doc. 63-3.

[26] Rec. Doc. 63.

[27] Rec. Doc. 70 at 4.

[28] Rec. Doc. 68.

[29] Rec. Doc. 69.

[30] Rec. Doc. 73.

[31] Rec. Doc. 68-1 at 7.

[32] *Id.* at 8.

be materially limited by the lawyer's responsibilities to another client.[33] Breaud asserts that the conflict of interest is not consentable because the City would have a claim against Cantrell and Davis for their conduct or a claim for indemnification for any award that Breaud might receive.[34]

Breaud contends that disqualification is warranted because this representation arrangement violates the public interest, perpetuates an appearance of impropriety in general, creates substantial risk that a specific impropriety will occur, and the likelihood of public suspicion from the appearance of impropriety outweighs any social interest served by the representation.[35] Accordingly, Breaud argues that the City Attorney's Office should be precluded from continuing to represent Cantrell and Davis and should solely represent the City of New Orleans.[36]

### B.    *Defendants' Arguments in Opposition to the Motion*

Defendants oppose the motion.[37] Defendants contend that Breaud does not have legal standing to move to disqualify opposing counsel, as there is no "manifest and glaring" or "open and obvious" conflict.[38] Defendants contend there is no directly adverse representation under Rule 1.7(a)(1) because Defendants' counsel does not represent any of the defendants in one matter against any of the other defendants in some other matter.[39] Defendants also contend that Plaintiff has failed to establish a conflict of interest under Rule 1.7(a)(2) because the City's position is not

---

[33] *Id.*

[34] *Id.* at 10.

[35] *Id.* at 7, 12–16.

[36] *Id.* at 16.

[37] Rec. Doc. 73.

[38] *Id.* at 5.

[39] *Id.*

adverse to the other defendants and there is not a significant risk that the representation of one defendant would be materially limited by obligations to the other defendants.[40]

### III. Legal Standard

Disqualification motions are governed by "state and national ethical standards adopted by the court."[41] "The local rules promulgated by the local court itself are the most immediate source of guidance for a district court."[42] However, because "[m]otions to disqualify are substantive motions," they are decided under federal law.[43] Thus, the Court must "consider the motion governed by the ethical rules announced by the national profession in the light of the public interest and the litigant's rights."[44] The Fifth Circuit instructs courts to look to the "norms embodied in the [ABA] Model Rules and the Model Code" for "the national standards" applicable to disqualification motions.[45]

The Eastern District of Louisiana has adopted the Louisiana State Bar Association's Rules of Professional Conduct.[46] These rules are identical to the ABA's Model Rules of Professional Conduct. Louisiana's Rule of Professional Conduct 1.7, which addresses concurrent conflicts of interest, reads as follows:

---

[40] *Id.* at 6–7.

[41] *F.D.I.C. v. U.S. Fire Ins. Co.*, 50 F.3d 1304, 1311–12 (5th Cir. 1995) (quoting *In re Am. Airlines, Inc.*, 972 F.2d 605, 610 (5th Cir. 1992)).

[42] *Id.* at 1312.

[43] *Id.*

[44] *Id.*

[45] *Id.*

[46] *See* LR 83.2.3.

7

> (a) Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:
>> (1) the representation of one client will be directly adverse to another client; or
>> (2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.
>
> (b) Notwithstanding the existence of a concurrent conflict of interest under paragraph (a), a lawyer may represent a client if:
>> (1) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;
>> (2) the representation is not prohibited by law;
>> (3) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal; and
>> (4) each affected client gives informed consent, confirmed in writing.

The Comments to ABA Model Rule 1.7 explain:

> Resolution of a conflict of interest problem under this Rule requires the lawyer to: 1) clearly identify the client or clients; 2) determine whether a conflict of interest exists; 3) decide whether the representation may be undertaken despite the existence of a conflict, i.e., whether the conflict is consentable; and 4) if so, consult with the clients affected under paragraph (a) and obtain their informed consent, confirmed in writing.

### IV. Analysis

*A.    Standing*

As an initial matter, Defendants argue that Breaud does not have standing to bring the Motion to Determine Conflict-Free Representation. "As a general rule, courts do not disqualify an attorney on the grounds of conflict of interest unless the former client moves for disqualification."[47] But in situations where a conflict is "manifest and glaring" or "open and obvious" in such a way that "confront[s] the court with a plain duty to act," a motion to disqualify

---

[47] *In re Yarn Processing Patent Validity Litigation*, 530 F.2d 83, 88 (5th Cir. 1976) (internal citations omitted).

8

can be successful even when brought by a non-former client.[48] When a potential conflict of interest issue arises, it is not only the attorneys' duty to ensure their clients know of the conflict, but it falls on the court to ensure litigants are fully aware of the nature and threat the conflict poses.[49] If a district court is confronted with unethical conduct in a proceeding before it, that court is "obliged to take measures against" that conduct.[50]

Courts have found that potential conflicts of interest caused by the same attorney representing both a municipality and its employees in a Section 1983 claim are "open and obvious," thus fitting within the narrow exception.[51] Here, the City Attorney's Office represents Cantrell, Davis, and the City. Thus, the potential for a conflict is open an obvious, and Plaintiff has standing to bring this Motion.

### B.     *Whether a Conflict of Interest Exists*

No Fifth Circuit case creates a binding rule on whether a concurrent conflict of interest exists when an attorney or law firm represents a municipality, while simultaneously representing individual government officials in the same action. But the Fifth Circuit has expressed in dicta its concern that "a serious problem of conflict of interest could exist in . . . 1983 actions in which one attorney represents both a county and a county official individually."[52] The potential conflict of a law firm or attorney representing a municipality and individual officials in a Section 1983 suit

---

[48] *Id.* at 89.

[49] *See, e.g.*, *Dunton v. Suffolk Cnty., State of N.Y.*, 729 F.2d 903, 908 (2d Cir.)*, as amended on other grounds*, 748 F.2d 69 (2d Cir. 1984).

[50] *Musicus v. Westinghouse Elec. Corp.*, 621 F.2d 742, 744 (5th Cir. 1980).

[51] *Nagle v. Gusman*, No. 12-1910, 2015 WL 1525827, at *8 (E.D. La. Apr. 2, 2015).

[52] *Van Ooteghem v. Gray*, 628 F.2d 488, 495 n.7 (5th Cir. 1980), *reh'g en banc granted, opinion vacated on other grounds*, 640 F.2d 12 (5th Cir. 1981), *and on reh'g en banc*, 654 F.2d 304 (5th Cir. 1981).

calls into question whether the attorney representing both parties "might find it difficult to protect the confidences of his individual client[s] while serving the interests of the [municipality]."[53] A potential conflict arises from the municipality's interest in arguing the officials were acting outside the scope of their employment thereby avoiding liability, while government officials have an interest in arguing they were acting in their official capacity as employees of the municipality to prevent personal liability for their actions.[54]

At this stage of the litigation, Breaud has not shown that Defendants are directly adverse to each other or that there is a significant risk that the representation of one defendant will materially limit the lawyers' responsibilities to another defendant. There is "no way of knowing if and when strategic posture may change" and if and when arguments that present an obvious conflict could be useful to a party.[55] With no documentation asserting the City's plans on indemnifying the individual defendants or showing that the City and the individual defendants are completely aligned in their defense theories, there is a possibility that a conflict of interest could arise in the future. By separate order, the Court is staying this matter pending resolution of the criminal proceedings pending against Cantrell in this District. A disqualification motion may be raised again, if necessary, after the stay of this litigation is lifted.

Accordingly,

---

[53] *Shadid v. Jackson*, 521 F. Supp. 87, 89 (E.D. Tex. 1981).

[54] *See Dunton*, 729 F.2d at 907 ("A municipality may avoid liability by showing that the employee was not acting within the scope of his official duties, because his unofficial actions would not be pursuant to municipal policy. The employee, by contrast, may partially or completely avoid liability by showing that he was acting within the scope of his official duties.").

[55] *Shadid*, 521 F.Supp at 90.

10

**IT IS HEREBY ORDERED** that Plaintiff Anne W. Breaud's Motion to Determine Conflict-Free Representation[56] is **DENIED WITHOUT PREJUDICE.** A disqualification motion may be raised again, if necessary, after the stay of this litigation is lifted.

**NEW ORLEANS, LOUISIANA,** this  15th  day of September, 2025.

**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**

---

[56] Rec. Doc. 68.