UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

ANNE W. BREAUD                                                    CIVIL ACTION

VERSUS                                                           NO. 24-1865

LATOYA W. CANTRELL, et al.                                       SECTION: "G"(1)

ORDER AND REASONS

On July 26, 2024, Plaintiff Anne W. Breaud ("Breaud") filed a Complaint in this Court against Mayor LaToya W. Cantrell ("Cantrell"), Clifton Davis II ("Davis"), the City of New Orleans (the "City"), and several other defendants for allegedly violating federal law, state law, and her civil rights in retaliation for Breaud capturing and circulating two photographs of Mayor Cantrell and New Orleans Police Officer Jeffrey Vappie at a restaurant together.[1]  Pending before the Court is a Second Motion to Stay the Proceedings filed by Cantrell, Davis, and the City.[2] Defendants request that this Court stay the instant case "in its entirety during the pending indictment proceedings, any appeals, and the prescriptive period for related allegations, which may not have expired under statutes of limitations."[3]

The motion was filed on August 18, 2025, and set for submission on September 3, 2025.[4] Pursuant to Local Rule 7.5, any opposition to the motion was due eight days before the noticed

---

[1] Rec. Doc. 1.

[2] Rec. Doc. 63.

[3] Rec. Doc. 63-1 at 13.

[4] Rec. Doc. 63-2.

1

submission date.[5] Breaud has not filed an opposition to the instant motion and therefore the motion is deemed unopposed. Breaud also indicated in another filing that she agrees the circumstances have significantly changed since the First Motion to Stay Proceedings was denied by the Court in September 2024, and she agrees a stay is appropriate.[6] A federal district court may grant an unopposed motion if the motion has merit.[7]

This Court is tasked with consideration of six factors when a stay is requested in a civil case filed in the face of a parallel criminal proceeding.[8] The Court previously denied Defendants' first Motion to Stay, which was filed before any defendant named in this case had been charged with a crime.[9]  At that time, the Court found the fact or scope of an imminent criminal proceeding was merely speculative and there was a strong interest in the resolution of the case.[10] Recently, Cantrell was charged in an eighteen count Superseding Indictment filed in the matter of *United States of America v. Jeffrey Paul Vappie II and LaToya Cantrell*, United States District Court for the Eastern District of Louisiana, Case No. 24-CR-165. Cantrell is charged with multiple counts of conspiracy, wire fraud, making false declarations before a grand jury, and obstruction of justice.[11] The filing of the criminal case transforms the landscape and completely changes the

---

[5] *See* EDLA Local Rule 7.5.

[6] Rec. Doc. 70.

[7] *See Braly v. Trail*, 254 F.3d 1082 (5th Cir. 2001).

[8] *Alcala v. Texas Webb Cnty.*, 625 F. Supp. 2d 391, 398–99 (S.D. Tex. 2009) (collecting cases). The factors include: (1) the extent to which the issues in the criminal case overlap with those presented in the civil case; (2) the status of the criminal case, including whether the defendant has been indicted; (3) the private interests of the plaintiff in proceeding expeditiously, weighed against the prejudice to the plaintiff caused by a delay; (4) the private interests of and burden on the defendant; (5) the interests of the courts; and (6) the public interest. *Id.*

[9] Rec. Doc. 13.

[10] *Id.*

[11] Rec. Doc. 63-3.

Court's analysis of the six factors.  For the reasons set forth in more detail below, Defendants have now shown that each of the six factors weigh in favor of a stay pending the conclusion of the criminal proceeding against Cantrell. However, Defendants' request for an indefinite stay pending the finality of any appeals and the expiration of any statutes of limitations for related allegations is overly broad. Therefore, having considered the motion, the memorandum in support, the record, and the applicable law, the Court grants the motion in part and stays this civil proceeding pending conclusion of the criminal case pending against Cantrell in the Eastern District of Louisiana. The Court denies the motion in part to the extent it requests that the stay remain in place until the conclusion of any appeals and the expiration of any statutes of limitations for related allegations, which at this point are unknown and merely speculative.

## I. Background

On Sunday, April 7, 2024, Breaud observed Cantrell, the Mayor of the City of New Orleans, "appearing to be enjoying a meal and a bottle of wine" with NOPD Officer Vappie on the balcony of Tableau Restaurant.[12] Breaud claims she captured two photographs of Cantrell and Vappie on the balcony.[13] After taking these pictures, Breaud asserts she forwarded them to Raphael Goyeneche, the President of the Metropolitan Crime Commission (the "Commission").[14] Thereafter, Breaud alleges the Commission reported the incident and provided the photographs to Deputy Chief Keith Sanchez of the NOPD's Public Integrity Bureau, requesting an investigation of Vappie's conduct with his protectee, Cantrell.[15] Breaud states that at some point shortly after

---

[12] Rec. Doc. 45 at 6–7.

[13] *Id.* at 7.

[14] *Id.* at 8.

[15] *Id.*

the Commission's report to the NOPD Public Integrity Bureau, which occurred on April 12, 2024, various media outlets published the photographs Breaud captured of Cantrell and Vappie.[16]

Breaud asserts Cantrell filed a police report against Breaud on May 9, 2024, with Cantrell claiming she was being "harassed" and "followed" by Breaud, as well as claims that Cantrell felt "unsafe" because of Breaud.[17] As a result of the information Cantrell provided to the NOPD, Breaud claims her personal information was accessed, obtained, and provided to Cantrell by certain Defendants somewhere between May 9, 2024 and May 10, 2024.[18]

Cantrell then filed a Petition for Protection from Stalking or Sexual Assault (the "Petition for Protection") against Breaud in state court, which Breaud claims contained false and defamatory statements.[19] The state court issued a Temporary Restraining Order against Breaud, but ultimately dismissed Cantrell's Petition for Protection.[20]

On July 26, 2024, Breaud filed a Complaint in this Court against Defendants LaToya W. Cantrell, the City of New Orleans, the New Orleans Police Department, Clifton Davis II, Victor Gant, Leslie D. Guzman, Ryan St. Martin, and John/Jane Does Numbers 1-5 for alleged "violation of her civil rights, the violation of federal law by individuals acting under color of law, and violations of state law, including defamation, abuse of process, abuse of right, intentional infliction of emotional distress, malicious prosecution, general tort liability and vicarious liability…"[21]

---

[16] *Id.*

[17] *Id.* at 11–12.

[18] *Id.* at 14.

[19] *Id.* at 16–17.

[20] *Id.* at 4, 20.

[21] Rec. Doc. 1 at 1.

On September 10, 2024, Defendants filed a motion to stay in light of alleged open criminal and administrative investigations into certain named Defendants.[22] On October 16, 2024, the Court denied the motion because the fact or scope of an imminent criminal proceeding was merely speculative and there is a strong interest in the resolution of the case.[23]

On December 12, 2024, the Court granted an unopposed motion to dismiss all claims pending against the New Orleans Police Department.[24] On January 14, 2024, Defendants Cantrell, the City of New Orleans, Davis, Gant, Guzman, and St. Martin filed a first Motion to Dismiss Pursuant to Rule 12(c) and for Qualified Immunity.[25] On March 27, 2025, this Court granted Breaud leave to file an Amended Complaint.[26] The Amended Complaint withdrew all allegations against Gant, Guzman, and St. Martin.[27] Therefore, the Defendants named in the Amended Complaint were Cantrell, the City of New Orleans, and Davis (collectively referred to hereafter as "Defendants").[28]

On April 10, 2025, Defendants filed a second Motion to Dismiss Pursuant to Rule 12(c) and for Qualified Immunity.[29] On July 2, 2025, the Court denied the motion and granted Breaud leave to amend the Complaint to address pleading deficiencies identified in the Order.[30] Breaud

---

[22] Rec. Doc. 10.

[23] Rec. Doc. 13.

[24] Rec. Doc. 21.

[25] Rec. Doc. 26.

[26] Rec. Doc. 44.

[27] Rec. Doc. 45.

[28] *Id.*

[29] Rec. Doc. 47.

[30] Rec. Doc. 54.

filed a Second Amended Complaint on July 16, 2025.[31] On July 30, 2025, Defendants filed a renewed Motion to Dismiss.[32]

On August 15, 2025, Cantrell was indicted by a grand jury in the Eastern District of Louisiana through a Superseding Indictment filed in the matter of *United States v. Jeffrey Paul Vappie II and LaToya Cantrell*, United States District Court for the Eastern District of Louisiana, Case No. 24-CR-165. The Superseding Indictment charges Cantrell with one count of conspiracy in violation of 18 U.S.C. §371, twelve counts of wire fraud in violation of 18 U.S.C. §1343, one count of conspiracy to obstruct justice in violation of 18 U.S.C. §1512(k), one count of making a false statement in violation of 18 U.S.C. § 1001(a)(2), one count of obstruction of justice in violation of 18 U.S.C. § 1512(c)(1), and two counts of making a false declaration before a grand jury in violation of 18 U.S.C. §1623.[33]

On August 18, 2025, Defendants filed the instant Second Motion to Stay the Proceedings.[34] The motion was set for submission on September 3, 2025.[35] Pursuant to Local Rule 7.5, any opposition to the motion was due eight days before the noticed submission date.[36] Breaud has not filed an opposition to the instant motion and therefore the motion is deemed unopposed.

## II. Defendants' Arguments

Defendants request that this Court stay the instant case "in its entirety during the pending

---

[31] Rec. Doc. 55.

[32] Rec. Doc. 60.

[33] Rec. Doc. 63-3.

[34] Rec. Doc. 63.

[35] Rec. Doc. 63-2.

[36] *See* EDLA Local Rule 7.5.

indictment proceedings, any appeals, and the prescriptive period for related allegations, which may not have expired under statutes of limitations."[37] Defendants argue that Cantrell is unable to respond through an Answer or engage in discovery in this matter without jeopardizing her rights to invoke her Fifth Amendment privilege.[38] Defendants assert the damage to Cantrell will be irreparable if she is forced to waive her rights in order to defend herself against this civil case or assert her rights and be penalized with a negative inference.[39]

Defendants contend each of the six factors courts in the Fifth Circuit consider when deciding whether to stay a civil action pending a parallel criminal proceeding mandate a stay of this case.[40] Defendants begin with the first factor, the extent to which the issues in the criminal case and the civil case overlap, contending this is "considered the most important threshold issue in determining whether to grant a stay."[41] Defendants assert that the allegations in the Superseding Indictment are "inextricably intertwined" with Breaud's claims in this action and the defenses available to Defendants.[42]

Defendants then analyze the second factor, which calls for examination of the status of the criminal case.[43] Defendants contend that a stay is most appropriate when, as here, a party has been indicted for the same conduct.[44] Defendants move on to discuss the third factor, whether Breaud

---

[37] Rec. Doc. 63-1 at 13.

[38] *Id.* at 3.

[39] *Id.*

[40] *Id.* at 5–6.

[41] *Id.* at 6.

[42] *Id.*

[43] *Id.* at 9.

[44] *Id.*

will be unduly prejudiced by the stay.[45] Defendants urge that courts require more prejudice than simply a delay in a plaintiff's right to expeditiously pursue their claim.[46] They argue a stay could be fashioned so that its duration is tied to the length of the criminal proceeding.[47]

Regarding the fourth factor, the private interests and burden on defendants, Defendants aver they will face substantial burdens if a stay is not granted.[48] Specifically, Defendants state Cantrell "will be forced to choose between her civil discovery obligations and her ability to assert her Fifth Amendment privilege against self-incrimination."[49] Next, Defendants address the fifth factor, the Court's interest in the stay.[50] Defendants reason that conducting the criminal proceedings prior to this civil case would advance judicial economy since concluding all proceedings in the criminal case "may contribute to the more efficient preparation of this civil case."[51] Lastly, Defendants argue that the sixth factor, which examines the public interest, weighs in favor of a stay.[52] Defendants cite *Campbell v. Eastland*[53] for the proposition that the public has an interest in law enforcement, leading to the conclusion criminal proceedings should take precedence over civil matters, the latter of which can be simply be stayed and adjudicated later.[54]

---

[45] *Id.* at 10.

[46] *Id.*

[47] *Id.*

[48] *Id.*

[49] *Id.* at 11.

[50] *Id.*

[51] *Id.*

[52] *Id.*

[53] 307 F.2d 478, 487 (5th Cir. 1962).

[54] Rec. Doc. 63-1 at 13.

### III. Legal Standard

"The stay of a pending matter is ordinarily within the trial court's wide discretion to control the course of litigation, which includes the authority to control the scope and pace of discovery."[55] This discretion grants district courts with the "power to stay proceedings before it in the control of its docket and in the interests of justice."[56] While district courts possess broad discretion in this area, "such control is not unbounded."[57] "Proper use of this authority calls for the exercise of judgment, which must weigh competing interests and maintain an even balance."[58]

The discretion to stay civil proceedings extends to situations in which a civil case is filed while there is a pending criminal proceeding or the "likelihood of a criminal case" exists.[59] In these contexts, "[c]ourts are afforded this discretion because the denial of a stay could impair a party's Fifth Amendment privilege against self-incrimination, extend criminal discovery beyond the limits set forth in Federal Rule of Criminal Procedure 16(b), expose the defense's theory to the prosecution in advance of trial, or otherwise prejudice the criminal case."[60] But, the "mere possibility of prejudice" is not enough for a party to obtain a stay, and the party moving for the stay decidedly bears the burden of establishing it is necessary.[61]

In this Circuit, courts are tasked with balancing six factors in determining if a stay is

---

[55] *In re Ramu Corp.*, 903 F.2d 312, 318 (5th Cir. 1990) (citing *Matter of Evangeline Refining Co.*, 890 F.2d 1312, 1320 (5th Cir. 1989); *Salter v. Upjohn Co.*, 593 F.2d 649, 651 (5th Cir. 1979)).

[56] *McKnight v. Blanchard*, 667 F.2d 477, 479 (5th Cir. 1982).

[57] *Wedgeworth v. Fibreboard Corp.*, 706 F.2d 541, 545 (5th Cir. 1983).

[58] *Id.* (internal quotation marks and citations omitted).

[59] *Wallace v. Kato*, 549 U.S. 384, 394 (2007).

[60] *Trustees of Plumbers and Pipefitters Nat'l Pension Fund v. Transworld Mech., Inc.*, 886 F. Supp. 1134, 1338, (S.D.N.Y. 1995) (internal citations omitted).

[61] *In re Ramu Corp.*, 903 F.2d at 320.

warranted when a civil case is filed while a parallel criminal proceeding is pending.[62] These factors, cited and applied by both parties in their memoranda, include:

> (1) the extent to which the issues in the criminal case overlap with those presented in the civil case; (2) the status of the criminal case, including whether the defendant has been indicted; (3) the private interests of the plaintiff in proceeding expeditiously, weighed against the prejudice to the plaintiff caused by a delay; (4) the private interests of and burden on the defendant; (5) the interests of the courts; and (6) the public interest.[63]

Even with the examination of these factors, the stay of a civil action until the conclusion of a related criminal proceeding is considered an "extraordinary remedy,"[64] and there exists a "strong presumption" in favor of proceeding forward in the civil matter to discovery.[65]

## IV. Analysis

Defendants request that this Court stay the instant case "in its entirety during the pending indictment proceedings, any appeals, and the prescriptive period for related allegations, which may not have expired under statutes of limitations."[66] The Court applies the six factors courts in this Circuit consider when deciding whether a stay of civil proceedings in the face of a parallel criminal proceeding is proper.

---

[62] *Alcala v. Texas Webb Cnty.*, 625 F. Supp. 2d 391, 398–99 (S.D. Tex. 2009) (collecting cases). As discussed in *Alcala*, these six factors were originally articulated by District Judge Denny Chin in *Plumbers and Pipefitters,* 886 F. Supp. at 1139. These factors are commonly applied by district courts in the Fifth Circuit. *See Alcala,* 625 F. Supp. 2d at 398.

[63] *Alcala*, 625 F. Supp. 2d at 398–99 (collecting cases).

[64] *Plumbers and Pipefitters*, 886 F. Supp. at 1339 (citing *In re Par Pharmacuetical, Inc.*, 133 F.R.D. 12, 13 (S.D.N.Y. 1990)).

[65] *Alcala*, 625 F. Supp. 2d at 397.

[66] Rec. Doc. 63-1 at 13.

A.    *Whether Defendants Have Established that a Stay is Warranted*

1.    **Overlap of Issues in the Criminal Proceeding and Civil Case**

The first factor this Court examines is the "extent to which the issues in the criminal case overlap with those presented in the civil case."[67] Some courts have found "'the similarity of issues in the underlying civil and criminal actions . . . the most important threshold issue in determining whether to grant the stay.'"[68] Prior to an indictment, courts have reasoned "whether the issues will even overlap is a mere 'matter of speculation.'"[69] Post-indictment is generally "when the degree of overlap between a criminal and civil case can most readily be determined.[70]

Breaud's claims against Cantrell involve some of the same conduct as that involved in the criminal proceeding. Many of the same witnesses could be expected to testify in both cases and it is likely that some of the documentary evidence will be the same.

In the Second Amended Complaint, Breaud alleges Cantrell "violated Anne Breaud's privacy and due process rights by obtaining Breaud's private personal information under knowingly false pretenses, where in-turn, Defendants Cantrell and Davis disseminated it publicly by including it (unredacted) in Cantrell's Petition for Protection."[71] Breaud further alleges the Order of Protection was obtained under false pretenses and for ulterior purposes, which include "to keep Breaud, and others from further exposing Cantrell's purported inappropriate romantic

---

[67] *Alcala*, 625 F. Supp. 2d at 398.

[68] *Waste Management of Louisiana, LLC v. River Birch, Inc.*, 2012 WL 520660, at *4 (E.D. La. 2012) (citing *Dominguez v. Hartford Fin. Servs. Grp., Inc.*, 530 F. Supp. 2d 902, 906–07 (S.D. Tex. 2008)).

[69] *Alcala*, 625 F. Supp. 2d at 401 (citing *United States ex rel. Shank v. Lewis Enters., Inc.*, 2006 WL 1064072, at *4 (S.D. Ill. 2006); *Square D Co. v. Showmen Supplies, Inc.*, 2007 WL 1430723, at *4 (N.D. Ind. 2007)).

[70] *Alcala*, 625 F. Supp. 2d at 401 (citing *U.S. ex rel. Gonzalez v. Fresenius Medical Care North America*, 571 F. Supp. 2d 758, 762 (W.D. Tex. 2008)).

[71] Rec. Doc. 55 at 25.

relationship with former NOPD Officer Jeffrey Vappie and exposing criminal conduct for which he has been indicted in United States District Court."[72]

The Superseding Indictment alleges that Cantrell harassed a private individual who took pictures of Cantrell and Vappie in public together.[73] Count 14 of the Superseding Indictment alleges that Cantrell and Vappie "intimidate[ed] a resident of the City of New Orleans for the purpose of suppressing and discouraging inquiry into CANTRELL'S public behavior with VAPPIE."[74]

The ongoing criminal proceeding against Cantrell will hinder Breaud's ability to discover certain information. The overlap between the criminal and civil cases is apparent based on the allegations made in the Second Amended Complaint and the Superseding Indictment. Therefore, the civil and criminal proceedings significantly overlap and this factor weighs heavily in favor of issuing a stay.

### 2.    Status of the Criminal Proceedings

The Court next analyzes the "status of the criminal case, including whether the defendant has been indicted."[75] District courts in this Circuit are split on whether a stay is more appropriate before an indictment has been handed down in a criminal proceeding, or after. Some have found that "when the government seeks a stay of civil discovery, the justification for obtaining a stay is often strongest before an indictment is handed down."[76] Alternatively, others have held that the

---

[72] *Id.* at 31.

[73] Rec. Doc. 63-3 at 5–6.

[74] *Id.* at 8–9.

[75] *Alcala*, 625 F. Supp. 2d at 398.

[76] *See Tajonera v. Black Elk Energy Offshore Operations, LLC*, No. 13-366, 2015 WL 893447, at *9 (E.D. La. Mar. 2, 2015) (Brown, J.) (quoting *SEC v. Offill*, No. 07-1643, 2008 WL 958072, at *3 (N.D. Tex. Apr. 9, 2008)).

propriety of a stay is better assessed post-indictment "when the degree of overlap between a criminal and civil case can most readily be determined."[77]

On August 15, 2025, Cantrell was indicted by a grand jury in the Eastern District of Louisiana through a Superseding Indictment filed in the matter of *United States v. Jeffrey Paul Vappie II, and LaToya Cantrell*, Criminal Action No. 24-165. The Superseding Indictment charges Cantrell with one count of conspiracy in violation of 18 U.S.C. § 371, twelve counts of wire fraud in violation of 18 U.S.C. § 1343, one count of conspiracy to obstruct justice in violation of 18 U.S.C. § 1512(k), one count of making a false statement in violation of 18 U.S.C. § 1001(a)(2), one count of obstruction of justice in violation of 18 U.S.C. § 1512(c)(1), and two counts of making a false declaration before a grand jury in violation of 18 U.S.C. § 1623.[78] Trial is currently set to begin on January 20, 2026 in the criminal case.

Considering the ongoing criminal prosecution, Cantrell has a real and appreciable risk of self-incrimination by proceeding with discovery in this case. Given that "[g]enerally, a stay of a civil case is 'most appropriate' when a party to the civil action has already been indicted for the same conduct,"[79] the Court finds that the second factor weighs in favor of a stay.

### 3. Breaud's Interest

Next, the Court examines "the private interests of the plaintiff in proceeding expeditiously, weighed against the prejudice to the plaintiff caused by a delay."[80] Breaud possesses a general

---

[77] *Alcala*, 625 F. Supp. 2d at 401 (internal citation omitted).

[78] Rec. Doc. 63-3.

[79] *Modern American Recycling Serv. v. Dunavant*, No. 10-3153, 2012 WL 1357720, at *3 (E.D. La. Apr. 19, 2012). *See also, Whitney Nat'l Bank v. Air Ambulance by B&C Flight Management, Inc.*, No. 04-2220, 2007 WL 1468417, at *3 (S.D. Tex. May 18, 2007).

[80] *Alcala*, 625 F. Supp. 2d at 399.

interest in expeditiously pursuing this civil action. In the prior Order denying Defendants' first Motion to Stay, the Court found that Breaud faced the potential for loss of evidence and the ability to put on an effective case as time passes. Now that criminal proceedings have been brought against Cantrell, this evidence will be collected and preserved in the criminal case.

The Court appreciates that Breaud has a significant interest in proceeding expeditiously and having her claims heard. Granting a stay of this case will not deny Breaud a possible recovery; instead, it will only delay that possible result. The Court recognizes that criminal defendants are entitled by law to a speedy trial, and thus the Court would expect the underlying criminal matter to be resolved expeditiously. As such, the third factor also weighs in favor of a stay.

### 4.    The Private Interests and Burden on Defendant

Next, the Court considers "the private interests of and burden on the defendant" if the stay is not granted.[81] The facts of the criminal case pending against Cantrell substantially overlap with this civil case. It is likely that Cantrell may be faced with discovery requests that will trigger a claim of Fifth Amendment privilege, thus hampering and/or preventing the resolution of this civil case. Thus, this factor weighs in favor of a stay.

### 5.    Interest of the Court

Under this factor, "a court can consider its own interests in efficient administration and judicial economy," including the interest of moving cases to a swift conclusion.[82] "[G]ranting a stay serves those interests because conducting the criminal proceedings first advances the judicial economy."[83] The Court has an interest in avoiding duplicative discovery, which would likely occur

---

[81] *Id.*

[82] *Fresenius*, 571 F. Supp. 2d at 765 (internal citations omitted).

[83] *Waste Management*, 2012 WL 520660, at *5 (citing *Offill*, 2008 WL 958072, at *3) (internal quotation marks omitted).

if a stay were not granted.[84] The criminal investigation and trial may "streamline" discovery in this litigation.[85] Thus, proceeding with this action at this time will result in the use of judicial resources that may not be necessary if the case proceeds after the criminal proceeding has been completed. Additionally, collateral estoppel or *res judicata* could apply to the overlapping issues.[86] The stay of this litigation will not be indefinite or unreasonable. Accordingly, this factor, like the previous four, weighs in favor of a stay.

### 6.    The Public Interest

Lastly, the Court considers the public interest in a stay. The Fifth Circuit has recognized that the public interest in law enforcement efforts though criminal investigation and prosecution is substantial:

> The very fact that there is clear distinction between civil and criminal actions requires a government policy determination of priority: which case should be tried first. Administrative policy gives priority to the public interest in law enforcement. This seems so necessary and wise that a trial judge should give substantial weight to it in balancing the policy against the right of a civil litigant to a reasonably prompt determination of his civil claims or liabilities.[87]

Although the public also has an interest in the prompt resolution of civil cases, Fifth Circuit precedent advises that this interest is subservient to law enforcement's prerogative in this situation. Therefore, the Court concludes that this factor also weighs in favor of a stay.

### B.    *Scope of the Stay*

Defendants request that this Court stay the instant case "in its entirety during the pending

---

[84] *Id*.

[85] *Id*.

[86] *Id*. (citing *Emich Motors Corp. v. Gen. Motors Corp.*, 340 U.S. 558, 568 (1951) ("It is well established that a prior criminal conviction may work an estoppel. . . .")).

[87] *Campbell v. Eastland*, 307 F.2d 478, 487 (5th Cir. 1962).

indictment proceedings, any appeals, and the prescriptive period for related allegations, which may not have expired under statutes of limitations."[88] Considering the factors set forth above, the Court finds a stay to be prudent and appropriate until the conclusion of the criminal proceeding pending against Cantrell in the Eastern District of Louisiana. However, Defendants request for an indefinite stay pending any appeals is overly broad. Although a criminal trial would be expected to occur with some expediency, the final resolution of the criminal case, including any appeals if Cantrell is convicted, could take many years.  For this reason, courts have suggested that it may be more appropriate to stay a civil matter pending resolution of the criminal trial, rather than the final resolution of any appeals.[89] At the conclusion of the criminal trial, Cantrell's Fifth Amendment privilege would not apply in the same way because any appeal would be based on the trial record not new testimony from the defendant. Therefore, the Court finds it appropriate for the stay to be lifted at the conclusion of the criminal trial.

Defendants request for an indefinite stay the expiration of any statutes of limitations for related allegations is also overly broad. Defendants do not identify any potential related charges or the length of any relevant statutes of limitations. Staying these proceedings pending the expiration of any potential statutes of limitations would in effect be an indefinite stay, as wire fraud has a 5-year statute of limitations from the last overt act of fraud[90] or a 10-year statute of limitations where the offense affects a financial institution.[91] Therefore, the Court denies the request that the case be stayed until the resolution of any appeals and the expiration of any statutes of limitations.

---

[88] Rec. Doc. 63-1 at 13.

[89] *McSurely v. McClellan*, 426 F.2d 664, 672 (D.C. Cir. 1970).

[90] *See* 18 U.S.C. § 3282.

[91] *See* 18 U.S.C. § 3293.

## V. Conclusion

Based on the foregoing, the Court grants the motion to stay this case in entirety pending resolution of the criminal proceedings pending against Defendant LaToya W. Cantrell in the Eastern District of Louisiana. The Court denies the motion in part to the extent it requests that the stay remain in place until the conclusion of any appeals and the expiration of any statutes of limitations for related allegations, which at this point are unknown and merely speculative. Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Second Motion to Stay the Proceedings[92] is **GRANTED IN PART AND DENIED IN PART.**

**IT IS FURTHER ORDERED** that the above-captioned matter is **STAYED** and **ADMINISTRATIVELY CLOSED** pending resolution of the criminal charges pending against Defendant LaToya W. Cantrell in the Eastern District of Louisiana under Case No. 24-CR-165. The parties shall file a motion to reopen the case within 30 days of the conclusion of Case No. 24-CR-165 so that it can be restored to the Court's active trial docket.

**NEW ORLEANS, LOUISIANA**, this __15th__ day of September, 2025.

**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**

---

[92] Rec. Doc. 63.

17